**Ex parte Leon Willis Johnston.**

**No. 56906.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 3, 1979.

It effectively made this determination on September 2, 1975.

None appearing for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is a petition for writ of habeas corpus filed pursuant to Art. 11.07, V.A.C.C.P.

The applicant was convicted of the offense of rape on his plea of not guilty to a jury and was assessed the death penalty [1] in June of 1964. The conviction was affirmed on appeal. See *Johnston v. State*, 396 S.W.2d 404, (Tex.Cr.App.), cert. denied 384 U.S. 1024, 86 S.Ct. 1976, 16 L.Ed.2d 1029 (1966).

The applicant filed a petition for writ of habeas corpus in the convicting court alleging that he was denied due process of law during his trial, because he was mentally incompetent to stand trial, and the trial court failed to conduct a separate hearing to determine if he was competent to stand trial when the issue was raised by the evidence. The convicting court, without an evidentiary hearing, reviewed the statement of facts of the original trial and made the following findings:

"The testimony of Dr. Norman L. Rubin, who was an expert witness in psychiatry and neuropsychiatry, testified [sic] that Petitioner [2] was, and had been all of his lifetime, obsessed with things of a sexual nature and a compel [sic] within him to carry on these acts. He further testified that, in his expert opinion, and based upon the history of Petitioner, that Petitioner is not in touch with reality at all times. He further diagnosed the illness of Petitioner as schizophrenic reaction, undifferentiated, chronic. This Doctor's

---

1. This sentence was subsequently commuted to life imprisonment.

2. The convicting court's references to "Petitioner" mean the applicant, Leon Willis Johnston.

"The word applicant, as used in this Chapter, refers to the person for whose relief the writ is asked, though the petition may be signed and presented by any other person." V.A.C.C.P., Article 11.13.

testimony was corroborated by Doctor H. L. Pope, another medical expert. His testimony also found much support in many lay witnesses who testified as to their knowledge and acquaintance with this Petitioner during all of his lifetime, including his teachers in school, and all testified that he was 'not all there,' and other peculiarities not possessed by normal [sic] acting people of his age."

Based upon his review of the original record, the convicting court concluded that the testimony adduced at the main trial was sufficient to raise a bona fide doubt as to the competency of the applicant to stand trial, and that the denial of a separate hearing on competency to stand trial was a denial of due process. The convicting court's findings of fact and conclusions of law have not been challenged by the State.

■ Our own review of the record[3] reflects that the applicant's witnesses at the original trial indicated that he "acted different" from other persons, that he acted like a "smaller child . . . when he was grown," that he "just wasn't all there," that he was "not like other children," that his grades in high school deteriorated with age, that he had polio when he was a child, this affliction lasting several years, that he was somehow "injured" while in the Navy. In addition, there was testimony that the applicant, shortly before the crime in question, indicated to his mother that he "needed a psychiatrist or mental doctor," and that he was afraid of what he "might do."

During the trial, one of the applicant's court-appointed attorneys informed the court that the medical testimony presented was relevant to the defendant's "state of mind this morning in this court room," indicating that psychiatric problems were persisting through the period of the trial. Also, in the cross-examination of the State's sole medical witness, Dr. Smith, it was pointed out that the applicant's own court-appointed attorney had gone to Dr. Smith, the county medical officer, to get tranquil-izers for the applicant so that "we could interview him."

■ No testimony was presented either at the original trial or during the habeas corpus proceeding by either of the applicant's original trial counsel. However, we note that trial counsel did submit a requested charge to the court asking the court to charge the jury on present insanity (incompetency) at the time of the trial. We also note that the trial court did charge the jury that it must acquit if it found that the applicant was presently insane. This means that the trial court believed that the evidence had raised the issue of present insanity (incompetency to stand trial); this is a factor to be considered in determining whether there was a bona fide doubt of the applicant's competence. *Ex parte Hagans*, 558 S.W.2d 457 (Tex.Cr.App.1977).

■ We agree with the convicting court's conclusion that there had been raised at trial a bona fide doubt as to the applicant's competence. Compare *Ex parte Hagans*, supra; *Ex parte Halford*, 536 S.W.2d 230 (Tex.Cr.App.1976).

■ When there is a bona fide doubt of a defendant's competence to stand trial, a state must provide procedures that are adequate to protect the defendant's due process right not to be tried while he is incompetent. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). This rule is applied retroactively. *Ex parte Halford*, 536 S.W.2d 230 (Tex.Cr.App.1976). To be adequate, the procedure must provide for a competency hearing that is separate from the trial on the issue of guilt. *Ex parte Hagans*, 558 S.W.2d 457 (Tex.Cr.App.1977). Such a procedure was not followed at the applicant's trial; the issue of his "present insanity" (incompetency to stand trial) was presented to the jury along with the issue of his guilt. The applicant is entitled to relief. *Ex parte Locklin*, 583 S.W.2d 787 (Tex.Cr.App.1979).

---

3. This Court may take judicial knowledge of its own records in such matters. See *Salinas v. State*, 542 S.W.2d 864 (Tex.Cr.App.1976); *Ex parte Flores*, 537 S.W.2d 458 (Tex.Cr.App. 1976).

A second reason for giving relief is that only the M'Naghten standard was given to the jury to determine both "present insanity" and insanity at the time of the offense. This was an improper standard for determination of present competency to stand trial. *Ex parte Hagans*, 558 S.W.2d 457 (Tex.Cr.App.1977).

The applicant's conviction for rape in cause 6096 in the 29th Judicial District Court of Palo Pinto County, in which judgment was rendered on June 3, 1964, is set aside. By virtue of the indictment pending in that cause, the applicant is remanded to the custody of the Sheriff of Palo Pinto County.

It is so ordered.