Keith Dwight MANNING, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–84–00816–CR to
05–84–00820–CR.

Court of Appeals of Texas,
Dallas.

Feb. 21, 1989.

Rehearing Denied March 21, 1989.

C. Wayne Huff, Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

Before HOWELL, THOMAS[1] and WHITTINGTON[2], JJ.

## ON REMAND FROM THE COURT OF CRIMINAL APPEALS

THOMAS, Justice.

A jury at a pretrial competency hearing found Keith Dwight Manning competent to stand trial. Manning was subsequently convicted of murder, attempted murder, and three counts of aggravated robbery, all arising from the hold-up of a convenience store. This Court affirmed the convictions, despite claimed errors at the competency hearing. *Manning v. State*, 704 S.W.2d 825 (Tex.App.—Dallas 1985), *rev'd*, 730 S.W.2d 744 (Tex.Crim.App.1987). The court of criminal appeals concluded that the trial court misplaced the burden of proof in its charge to the jury during the competency hearing. Thus, the court remanded the case to this Court with instructions to abate and return the case to the trial court for a determination of Manning's competency at the time of his trial. *Manning v. State*, 730 S.W.2d 744, 750 (Tex.Crim.App.1987).

We abated the proceedings and ordered the trial court to conduct a competency hearing. At that hearing, a jury determined that Manning was competent at the time his trial occurred. Manning has filed a supplemental brief, complaining of two alleged errors at that hearing: 1) the trial court allowed Manning's attorney from the first trial to testify in violation of the attorney-client privilege; 2) the trial court improperly overruled Manning's objection to testimony which indicated that the issue of competency had been resolved at a prior proceeding. Finding no error, we affirm Manning's convictions.

## I. ATTORNEY AS WITNESS ON COMPETENCY

In his first point of error, Manning contends that the trial court erred in allowing his former attorney to testify concerning Manning's competency during trial because that testimony violated the attorney-client privilege. Manning's attorney, Michael Byck, testified before the jury that he had been practicing law since 1972 and was board certified in criminal law in 1979. He was appointed by Judge Kinkeade to represent Manning at his former trial. He was the counsel of record during the trial of the case from July 17, 1984 through July 24, 1984. Byck testified that Manning was in the courtroom with him during that time. He had conversations with Manning during that time, with Manning talking to him and him talking to Manning. Based upon his observations and conversations, Byck formed the opinion that Manning had a rational as well as a factual understanding of the proceedings against him. Byck also stated that Manning did "understand what was going on. He did have an ability to communicate."

Manning does not cite, and we have not found, any Texas cases that explicitly address the issue of the attorney-client privilege in competency proceedings. There are a number of cases which mention defense counsel's testimony at a competency hearing; however, in none of those cases was the attorney-client privilege at issue. *See Futch v. State*, 632 S.W.2d 743, 746 (Tex. Crim.App.1982); *Garcia v. State*, 595 S.W. 2d 538, 540 (Tex.Crim.App.1980); *Lang v. State*, 747 S.W.2d 428, 431 (Tex.App.—Corpus Christi 1988, no pet.). Thus, we are faced with an issue of first impression. In resolving the matter, we will examine the nature of the competency hearing and the attorney-client privilege in Texas, as well as examine relevant out-of-state authority.

### A. THE NATURE OF THE INQUIRY INTO COMPETENCE

It is well settled that the conviction of an accused while he is legally incompetent to stand trial violates due process. *Massey v. Moore*, 348 U.S. 105, 108, 75

---

1. The Honorable Linda Thomas, Justice, succeeded the Honorable Ted Akin, a member of the original panel. Justice Thomas has reviewed the briefs and the record before the court.

2. The Honorable John Whittington, Justice, succeeded the Honorable Patrick Guillot, a member of the original panel. Justice Whittington has reviewed the briefs and the record before the court.

S.Ct. 145, 147, 99 L.Ed. 135, 138 (1954); *Morales v. State,* 587 S.W.2d 418, 421 (Tex. Crim.App.1979). A state must provide procedures that are adequate to protect a defendant's due process right not to be tried while he is incompetent. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815, 818 (1966); *Ex parte Johnston,* 587 S.W.2d 163, 165 (Tex.Cr.App. 1979). The test of legal competence is whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960). *See also* TEX.CODE CRIM.PROC.ANN. art. 46.02, § 1 (Vernon 1979); *Morales,* 587 S.W.2d at 421.

■ The constitutional implications of the competency issue rest upon principles fundamental to our adversary system of justice. *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103, 113 (1975). Our judicial system assumes that truth and justice result from the clash of adversaries. The adversaries in a criminal case, however, are not lawyers but are a defendant and the State. The United States Constitution guarantees more than a right to counsel. The fundamental guarantee of the sixth amendment is the defendant's right to control and participate in his defense. *See Faretta v. California,* 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533–34, 45 L.Ed.2d 562, 572–73 (1975).

■ Of course, as a corollary to this rule the defendant must be able to participate in or assist counsel in the conduct of his defense. It is also necessary that the defendant have the mental ability to control the decision-making process. It is the defendant, "with the help of counsel, [who must] rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Brady v. United States,* 397 U.S. 742, 750, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747, 757 (1970). The same rule, of course, obtains with regard to other essential issues, such as whether a defendant should waive his right to counsel. *Johnson v.*

*Zerbst,* 304 U.S. 458, 462–65, 58 S.Ct. 1019, 1022–23, 82 L.Ed. 1461, 1465–66 (1938). Obviously, the defendant can neither exercise his right to participate and assist in his defense, nor make the final decisions relating to the conduct of his defense, if he is mentally incompetent to engage in these activities.

■ One commentator has suggested that the resolution of the competency issue is nonadversarial. Pizzi, *Competency to Stand Trial in Federal Courts: Conceptual and Constitutional Problems,* 45 U.CHI.L.REV. 21, 56–59 (1977). Because a defendant cannot be tried at all if he is unable to assist in his defense, the only purpose for the determination of competency to stand trial is to see whether the adversarial process can be commenced or continued. *Id.; see also Bishop v. Superior Court,* 150 Ariz. 404, 724 P.2d 23, 26 (1986). Thus, raising the issue of competency suspends the adversarial process.

The Texas Court of Criminal Appeals seems to recognize that the nature of the competency hearing is very different from that of the adversarial trial on the merits. In *Ex parte Harris,* 618 S.W.2d 369 (Tex. Crim.App.1981), for example, the court noted that extraneous offenses, which are ordinarily inadmissible during trial on guilt and innocence, are admissible during a competency hearing:

> The basic purpose for the exclusion of extraneous offenses is to prevent the accused from being tried for some collateral crime or for being a criminal generally. [citation omitted] Such purpose is not applicable in a competency hearing. A petitioner's guilt or innocence is to be determined in a separate trial where extraneous offenses are generally prohibited. [citation omitted] In a competency hearing, all relevant facts concerning petitioner's mental competency should be submitted to the jury.

*Harris,* 618 S.W.2d at 373.

Again in *Ex parte Lewis,* 587 S.W.2d 697 (Tex.Crim.App.1979), the court appears to recognize the nonadversarial aspects of the issue of competency. The court held that the prosecutor was required to reveal to

the defense a letter from a psychiatrist which indicated that the defendant may have been incompetent to stand trial. "[I]nformation about the incompetence of a defendant can be of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request from the defendant." *Id.* at 701.

Because the issue of competency goes to the fundamental issue of whether a defendant can exercise his constitutional rights, and because the resolution of the issue is essentially nonadversarial, it has been suggested that the defense counsel's role in a competency proceeding is markedly different from his role in the adversarial trial process:

> If the defense attorney's primary responsibility is to protect the defendant's exercise of his constitutional rights, what adversarial position should the attorney assume when the issue being determined is the ability of the defendant to exercise his rights? If the defendant has been offered a very advantageous plea, should the attorney argue vigorously for his client's competency, even though the attorney personally believes that the defendant is incompetent? Or in such a case should the attorney follow his own assessment of his client's competency and argue that the defendant is incompetent and that any plea would be involuntary?
>
> *  *  *  *  *  *
>
> Counsel has no obligation to see that the court makes what counsel personally believes to be the correct ruling with respect to the suppression of evidence or the determination of probable cause. It could be argued similarly that the correct determination of competency is the responsibility of the court, not defense counsel and therefore, if he believes that a plea is in his client's best interest, counsel should take the adversarial position that his client is competent. The problem with this argument is that defense counsel has a responsibility for the correct determination of the competency issue that he does not have with respect to other issues. A trial court's erroneous rulings in favor of the defendant on issues other than competency do not adversely affect the defendant's constitutional rights; instead the court may simply be giving those rights a broader sweep than it should. But if the court erroneously concludes that the defendant is competent, the court's decision goes directly to the defendant's ability to waive or assert his constitutional rights. Although it is the court's responsibility to determine the issue of competency, counsel has the obligation, flowing from his duty to protect his client's rights, to see that the issue is decided correctly. As with the question of raising the competency issue, counsel is not free to chart an adversary course at the hearing based on his view of the client's best interests.

Pizzi, 45 U.CHI.L.REV. at 58.

■ Courts of other states have recognized that defense counsel is often the most knowledgeable witness on the issue of competency of a defendant to stand trial. In fact, he may be the only witness. *See, e.g., Bishop,* 724 P.2d at 27. The determination to be made in a competency hearing is whether the defendant has both the ability to assist his lawyer and a rational and factual understanding of the charges and proceedings. *See* TEX.CODE CRIM.PROC.ANN. art. 46.02, § 1 (Vernon 1979).

> Who but defense counsel is in a better position to testify to the ultimate issues? ... It is counsel who spends time with a defendant in a manner which allows observation of the facts necessary to determine the issues to be decided at the competency hearing. Unlike any of the adversarial issues, on the question of competency to comprehend the proceedings and assist the attorney, the defense lawyer is often the most cogent witness.

*Bishop,* 724 P.2d at 27–28.

■ The nature and constitutional implications of the competency inquiry compel us to conclude that the court should be able to utilize counsel's knowledge whenever the question of competency to stand trial is raised. Such a result, however, raises the danger that defense counsel may be called

upon to testify concerning his communication with his client. Thus, we must examine the question of privilege.

## B. ATTORNEY–CLIENT PRIVILEGE

The oldest of the privileges, the attorney-client privilege traces its ancestry to the reign of Elizabeth I and beyond. 8 WIGMORE, EVIDENCE § 2290 (McNaughton rev. 1961); MCCORMICK, EVIDENCE § 87 (3d ed. 1984). In Texas, the attorney-client privilege was accorded statutory recognition more than a century ago. *See* TEX.CRIM.PROC.CODE art. 646 (1854). Rule 503 of the Rules of Criminal Evidence sets out the privilege applicable in this case:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client.... A client has a privilege to prevent the lawyer or the lawyer's representative from disclosing any other fact which came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship.

TEX.R.CRIM.EVID. 503(b). This rule tracks the language of the precursor statute, article 38.10 of the Code of Criminal Procedure. TEX.CODE CRIM.PROC. ANN. art. 38.10 (Vernon 1979).[3] Article 38.10, although codified in the Code of *Criminal* Procedure, was held to apply in civil proceedings and was routinely held to be a statutory codification of the common law rule. *See Miller v. Pierce*, 361 S.W.2d 623, 625 (Tex.Civ.App.—Eastland 1962, no writ); *Cochran v. Cochran*, 333 S.W.2d 635, 641 (Tex.Civ.App.—Houston [1st Dist.] 1960, writ ref'd n.r.e.).[4]

The recognized purpose of the attorney-client privilege is to promote the unrestrained communication between an attorney and client in all matters in which the attorney's professional advice or services are sought, without fear that these confidential communications will be disclosed by the attorney in any legal proceeding. *Cruz v. State*, 586 S.W.2d 861, 865 (Tex.Crim.App.1979). The court of criminal appeals has held that an attorney's testimony does not violate the privilege where no communications between counsel and a defendant have been revealed. *See Church v. State*, 552 S.W.2d 138, 142 (Tex.Crim.App.1977); *see also Jackson v. State*, 624 S.W.2d 306, 309 (Tex.App.—Dallas 1981, no pet.).

Few courts have dealt with the issue of defense attorney testimony in a competency hearing; however, the weight of authority supports the view that an attorney may testify at a competency hearing without violating the attorney-client privilege. *See Darrow v. Gunn*, 594 F.2d 767, 774 (9th Cir.), *cert. denied*, 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979); *Malinauskas v. United States*, 505 F.2d 649, 655 (5th Cir. 1974); *Clanton v. United States*, 488 F.2d 1069, 1070–71 (5th Cir.), *cert. denied*, 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1974); *United States v. Tom*, 340 F.2d 127, 128 (2d Cir.1965); *United States v. Kendrick*, 331 F.2d 110, 113–14 (4th Cir. 1964); *Howell v. United States*, 282 F.Supp. 246, 250 (N.D.Ill.1968), *aff'd*, 442 F.2d 265 (7th Cir.1971); *Bishop v. Superior Court*, 150 Ariz. 404, 724 P.2d 23, 29–30 (1986); *People v. Bolden*, 99 Cal.App.3d 375, 160 Cal.Rptr. 268, 270 (1979); *Jones v. District Court*, 617 P.2d 803, 807–08 (Colo. 1980); *State v. Jensen*, 286 Minn. 65, 174 N.W.2d 226, 230 (1970); *Underwood v. State*, 553 S.W.2d 869, 871 (Mo.Ct.App. 1977); *People v. Kinder*, 126 A.D.2d 60, 512 N.Y.S.2d 597, 599–600 (1987). *But see Gunther v. United States*, 230 F.2d 222, 223 (D.C.Cir.1956) (Although the *Gunther* court held that attorney testimony on competence would violate the privilege, this rule may have been overruled in *United States v. David*, 511 F.2d 355, 360 (D.C.Cir. 1975), in which the court noted that an attorney's input on competency of his client would be very useful, and that the trial

---

3. Repealed in conjunction with the promulgation of the Texas Rules of Criminal Evidence, and now rule 503(b) of those rules.

4. These cases refer to article 713 of the Code of Criminal Procedure, which was subsequently recodified at article 38.10.

court should have inquired further concerning the defendant's competence in light of defense counsel's "misgivings" concerning his client's competence.).

All of these cases have held that an attorney's testimony did not violate the attorney-client privilege because the attorney did not reveal any confidential communication. Representative of this view is *People v. Kinder:* "Consistent with its purpose, the privilege protects from disclosure the substance of the communications, not the demeanor and mental capacity of the client during these communications, for in the usual case the client intends that only the substance of the communications be held in confidence." 512 N.Y.S.2d at 599. In *United States v. Kendrick,* the court noted:

> Communications made in confidence by a client to his attorney are protected by the attorney-client privilege. It is the substance of the communications which is protected, however, not the fact that there have been communications. Excluded from the privilege, also, are physical characteristics of the client, such as his complexion, his demeanor, his bearing, his sobriety and his dress. Such things are observable by anyone who talked with the client, and there is nothing, in the usual case, to suggest that the client intends his attorney's observations of such matters to be confidential. In short, the privilege protects only the client's confidences, not things which, at the time, are not intended to be held in the breast of the lawyer, even though the attorney-client relation provided the occasion for the lawyer's observation of them.

331 F.2d at 113–14 (footnote omitted).

Sound reasons support the conclusion reached by other courts that the attorney-client privilege is not violated when the substance of client communication is not revealed. However, Manning focuses upon a unique aspect of the Texas attorney-client privilege as it applies in criminal cases. In addition to a prohibition against revealing confidential communication, the rule protects against the disclosure of "any

other fact which came to the knowledge of the lawyer ... by reason of the attorney-client relationship." TEX.R.CRIM.EVID. 503(b). Manning argues that this rule prevents his former attorney's testimony concerning Manning's ability to consult with his attorney and to understand the nature of the proceedings against him.

The meaning of the phrase, "any other fact which came to the knowledge of the lawyer ... by reason of the attorney-client relationship," has not been explained by the court of criminal appeals. It is derived from former article 38.10 of the Code of Criminal Procedure. One commentator has noted that the precise contours of this phrase are a mystery, but if read literally, the rule would prevent the disclosure of matters that neither involved communications between lawyer and client, nor were intended to be confidential. *See* S. GOODE, O. WELLBORN & M. SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 503.2 (Texas Practice 1988). However, a close examination of the case law reveals that the courts have not read the rule to shield such matters. In *Russell v. State,* 598 S.W.2d 238 (Tex.Crim.App.1980), for example, the court held that the attorney-client privilege did not bar the defendant's former attorney's testimony that he had appeared in court with the defendant, that he had signed a stipulation of evidence and waiver of jury trial as the defendant's attorney, and that he did not sign the defendant's name to the document. *Id.* at 252. *See also Brasfield v. State,* 600 S.W.2d 288, 295 (Tex.Crim.App.1980) (privilege not violated when former attorney testified that the defendant was in town during the afternoon of the murder); *Church v. State,* 552 S.W.2d 138, 142 (Tex.Crim.App.1977) (since no communication was revealed in attorney's testimony concerning his presence and activities at a lineup, the privilege was not violated); *Cathey v. State,* 467 S.W.2d 472, 473–74 (Tex.Crim.App.1971) (no violation where attorney identified the defendant's signature on a bail bond); *Bridges v. State,* 131 Tex.Crim. 482, 100 S.W.2d 372, 374 (1936) (no confidential communication involved in attorney's testimony

that he did not see alleged absent witness in court at previous trial, thus no violation of the privilege); *Jackson v. State*, 624 S.W.2d 306, 309 (Tex.App.—Dallas 1981, no pet.) (no violation where attorney testified as to his preparation of nonprosecution affidavit signed by complainant without revealing any client communication).

Nevertheless, Manning argues that his attorney would not have been in a position to express an opinion concerning his competency if there had not been an attorney-client relationship. Thus, he contends that the "fact" of his competency became known to the attorney "by reason of the attorney-client relationship." We disagree. The San Antonio Court of Appeals rejected a similar argument in *Lopez v. State*, 651 S.W.2d 830 (Tex.App.—San Antonio 1983, pet. ref'd). There, Lopez complained of his former attorney's testimony that Lopez was present at the scene of the crime. He argued that since the only way the witness could identify him was because he had represented Lopez, the testimony was protected as arising by virtue of the attorney-client relationship. *Id.* at 838. The reviewing court was unpersuaded, as are we.

Any person could have observed Manning's demeanor and could have conversed with him; the happenstance that the observer was his attorney does not mean that the observation arose "by reason of the attorney-client relationship." We believe the better view is expressed in *Bridges v. State;* the court found no violation of the privilege, reasoning, "[t]he attorney merely testified to facts within his knowledge which he gathered from personal observation and not to any communication between client and attorney." *Bridges*, 100 S.W.2d at 374.

### C.  CONCLUSION

We conclude that the testimony of Manning's former attorney did not violate the attorney-client privilege set out in rule 503 of the Rules of Criminal Evidence. Further, because of the nonadversarial nature of the competency hearing and because of the constitutional implications of the competency inquiry, we conclude that a defendant's attorney's testimony in that setting is appropriate, so long as confidential communications are not revealed. Consequently, we overrule point of error one.

### II.  PRIOR RESOLUTION OF COMPETENCY ISSUE

In his second point of error, Manning contends that certain testimony improperly suggested to the jury that the issue of Manning's competency had been resolved at a prior trial. The complained-of testimony was as follows:

PROSECUTOR: Mr. Byck, during the—prior to July 17th at some—wait a minute. Let me rephrase that. Prior to this case proceeding to trial was the issue of the competency of the defendant raised?

BYCK: Yes, it was.

PROSECUTOR: All right, and was it resolved?

BYCK: Yes.

DEFENSE COUNSEL: Well, I will object to that last question and answer, Your Honor. It's totally irrelevant.

THE COURT: The objection is overruled.

In order to preserve error for appellate review, a party must interpose at trial a specific objection to the claimed error. TEX.R.APP.P. 52. A general objection presents no error for review. *Goodrich v. State*, 632 S.W.2d 349, 349 (Tex.Crim.App. 1982); *McWherter v. State*, 607 S.W.2d 531, 535 (Tex.Crim.App.1980); *Smith v. State*, 513 S.W.2d 823, 830 (Tex.Crim.App. 1974). An objection that evidence is irrelevant has been held to be too general to preserve error. *See Barnard v. State*, 730 S.W.2d 703, 716 (Tex.Crim.App.1987). We conclude that Manning's objection presents nothing for review. We overrule point of error two.

Having found no merit in Manning's two points of error, we affirm the trial court's judgment.