Affirmed and Memorandum Opinion filed March 31, 2009








Affirmed
and Memorandum Opinion filed March 31, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-01067-CR

____________

 

YAMAR SANCHEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 23rd District
Court

Brazoria County, Texas

Trial Court Cause No. 52,756

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant Yamar Sanchez of possession of a
deadly weapon in a penal institution and sentenced him to eight years= imprisonment.  In
four issues, appellant challenges the legal and factual sufficiency of the
evidence, and claims the trial court erred by admitting statements he allegedly
made to prison officials and refusing to declare a mistrial at punishment after
the State attempted to connect him to gang activity.  We affirm.








I.  Background

On December 14, 2005, Sergeant Patrick Mora conducted a
routine strip-search of inmates at the Texas Department of Criminal Justice=s (TDCJ=s) Darrington
Unit.  At trial, Sergeant Mora testified that once he began searching the
inmates, he noticed appellant (an inmate at the unit) go to the back of the
line.  When Sergeant Mora reached him, appellant handed over his clothing but
acted as if he was not going to give up his shoes, though doing so was normal
procedure.  Sergeant Mora requested appellant=s shoes and sensed
something was wrong when appellant hesitated before handing them over. 
Sergeant Mora found a sharpened piece of steel with a plastic pen cap for a
handle located inside a glove hidden underneath the insole of one of appellant=s shoes.[1] 
Sergeant Mora handcuffed appellant and delivered the weapon to his supervisor.

Appellant gave a different account of the incident.  He
claimed he was wearing boots without insoles when Sergeant Mora searched him,
and that Sergeant Mora did not find the weapon in appellant=s shoe, but rather
found it inside a plastic glove he told appellant to pick up.  At trial,
appellant denied ever seeing the weapon before Sergeant Mora found it in the
glove, and denied ever admitting owning the weapon.








In rebuttal, Sergeant Mora testified that after he found
the weapon, appellant spontaneously admitted owning it for protection.[2] 
Sergeant Mora=s testimony suggests this admission came after he
handcuffed appellant.  Ernie Miles, appellant=s counsel
substitute,[3]
also testified over objection that appellant admitted at a disciplinary hearing
to possessing the weapon for protection.  Miles further testified that
appellant never told her Sergeant Mora had him pick up a plastic glove
containing the weapon.

The jury found appellant guilty of possession of a deadly
weapon in a penal institution.  At punishment, the State attempted to link
appellant to the activities of Security Threat Groups (commonly referred to as Agangs@) through the
testimony of Sergeant Fernando Briseno.  The trial court sustained appellant=s objection to
Sergeant Briseno=s testimony and instructed the jury to
disregard the portion of his testimony concerning gangs, but denied appellant=s motion for
mistrial.  The jury sentenced appellant to eight years= imprisonment. 
This appeal followed.

II.  Analysis

A.  Sufficiency of the Evidence

To sustain a conviction for the charged offense, the State
was required to prove beyond a reasonable doubt that appellant (1) while
confined in a penal institution, (2) intentionally or knowingly (3) possessed
or concealed (4) a deadly weapon (5) therein.  See Tex. Penal Code Ann. ' 46.10(a) (Vernon
2003).

1.  Legal sufficiency of the evidence of appellant=s state of mind








In his second issue, appellant challenges the legal
sufficiency of the evidence to prove that his possession of the weapon was
knowing or intentional.  In reviewing a legal sufficiency challenge, we view
the evidence in the light most favorable to the verdict and determine whether a
rational trier of fact could have found the essential elements of a crime
beyond a reasonable doubt.  Salinas v. State, 163 S.W.3d 734, 737 (Tex.
Crim. App. 2005).  The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to
believe or disbelieve any portion of the testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986).  The jury may also draw reasonable
inferences from basic facts to ultimate facts.  Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996).  When faced with conflicting evidence,
we presume the trier of fact resolved conflicts in favor of the prevailing
party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 
Whether a defendant possessed the state of mind required to commit the charged
offense must ordinarily be established by circumstantial evidence, which may
include the defendant=s words and conduct.  Guevara v. State,
152 S.W.3d 45, 49B50 (Tex. Crim. App. 2004).

Appellant contends there is no evidence that his possession
of the weapon was knowing or intentional, other than his admissions to Miles
and Sergeant MoraCwhich he claims were inadmissible, and
therefore presumably outside the bounds of our review.  But in a legal
sufficiency review, we consider all the record evidence, regardless of its
admissibility.  Powell v. State, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). 
The evidence of appellant=s evasive behavior during the search, and
his subsequent admissions to Miles and Sergeant Mora, provided a legally
sufficient basis for the jury to infer that appellant=s possession of
the weapon was knowing or intentional, and find that element of the charged
offense beyond a reasonable doubt.  See Guevara, 152 S.W.3d at 49B50; see also
Clewis, 922 S.W.2d at 133.  We overrule appellant=s second issue.

2.  Factual sufficiency of the evidence








In his first issue, appellant contends the evidence is
factually insufficient to support the jury=s verdict.  In
evaluating the factual sufficiency of the evidence, we view all the evidence in
a neutral light and will set aside the verdict only if we are able to say, with
some objective basis in the record, that the conviction is clearly wrong or
manifestly unjust because the great weight and preponderance of the evidence
contradicts the jury=s verdict.  Watson v. State, 204
S.W.3d 404, 414B17 (Tex. Crim. App. 2006).  We cannot
declare that a conflict in the evidence justifies a new trial simply because we
disagree with the jury=s resolution of that conflict, and we do
not intrude upon the fact-finder=s role as the sole
judge of the weight and credibility of witness testimony.  See id. at
417; Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The
fact-finder may choose to believe all, some, or none of the testimony
presented.  Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App.
1991); In re A.B., 133 S.W.3d 869, 872 (Tex. App.CDallas 2004, no
pet.).  In our review, we discuss the evidence appellant claims is most
important in allegedly undermining the jury=s verdict, Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003), and if we determine
the evidence is factually insufficient, we must explain in exactly what way we
perceive the conflicting evidence to greatly preponderate against conviction.  Watson,
204 S.W.3d at 414B17.

Appellant complains of inconsistencies between Sergeant
Mora=s testimony and
his prior reports and the implausibility of Mora=s testimony that
appellant was walking normally prior to the search despite having a steel shank
in his shoe.  However, these complaints go mainly to Sergeant Mora=s credibility, an
issue within the sole province of the jury.  See Fuentes, 991 S.W.2d at
271.

Similarly, appellant points to conflicts between his and
Sergeant Mora=s account of the type of shoe appellant was wearing
and whether the shoe Mora claims appellant was wearing was available to
appellant.  The mere fact that the witnesses= accounts conflict
is an insufficient basis on which to overturn the jury=s verdict for
factual insufficiency.  See Watson, 204 S.W.3d 404 at 417.  The jury was
entitled to believe Sergeant Mora=s account and
disbelieve appellant=s.  See Chambers, 805 S.W.2d at
461; In re A.B., 133 S.W.3d at 872.

Finally, appellant complains that the Office of the
Inspector General (OIG) did not check the weapon for fingerprints, but OIG=s evidence officer
testified such a check was unnecessary based on the size and texture of the
weapon.  Moreover, the testimony of Sergeant Mora sufficiently linked appellant
to the weapon.

Having neutrally reviewed the entire record, including the
evidence highlighted by appellant, we find no objective basis for saying the
jury=s verdict is
clearly wrong or manifestly unjust.  Accordingly, we conclude that the evidence
is factually sufficient to support the verdict, and we overrule appellant=s first issue.








B.  Statements to Prison Officials

In his third issue, appellant alleges the trial court erred
in admitting statements he made to prison officials admitting he possessed the
weapon.  We review the trial court=s rulings on the
admissibility of evidence for an abuse of discretion.  Moses v. State,
105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  We must affirm the trial court=s ruling if it is
within the zone of reasonable disagreement.  Id.  Further, if we find
that the admission was erroneous, we are to reverse the judgment of the trial
court only if we find that appellant=s substantial
rights were affected.  Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim.
App. 2002).  If, however, after reviewing the record as a whole, we find fair
assurance that the error did not influence the jury, or had but a slight
effect, the error is harmless.  Id.

1. 
Appellant=s admission to Sergeant Mora

Sergeant
Mora testified that appellant admitted owning the weapon after Sergeant Mora
discovered it and placed him in handcuffs.  Appellant contends that the
statement was involuntary, and therefore inadmissible, because (1) as a matter
of Acommon sense@ a handcuffed, incarcerated offender
is compelled by outside influence to make such a statement and (2) he was
compelled to make the statement by TDCJ=s requirement that offenders
immediately comply with and obey the staff=s lawful instructions and orders,
thus rendering the trial court=s admission of that evidence reversible error under Lykins
v. State, 784 S.W.2d 32, 37 (Tex. Crim. App. 1990) (holding that an
offender does not waive the privilege against self-incrimination by answering a
TDCJ staff member=s questions when failure to do so would result in a
penalty).  See Tex. Dep=t of Crim. Justice, Correctional Insts. Div.,
Offender Orientation Handbook 23 (2004).








Appellant=s first contention is apparently
based on a definition of Avoluntary@ as Anot impelled by outside influence.@  Black=s Law Dictionary 1605 (8th ed. 2004).  The Court of
Criminal Appeals has identified three theories under which a criminal defendant
may claim that an out-of-court statement was involuntary: (1) general
involuntariness under articles 38.21 and 38.22 of the Code of Criminal
Procedure; (2) violation of the standards set forth in Miranda v. Arizona,
384 U.S. 436 (1966), as expanded in article 38.22, sections 2 and 3 of
the Code of Criminal Procedure; or (3) violation of the Due Process Clause.  Oursbourn
v. State, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008).  Although appellant
does not cite relevant legal authority or otherwise specify which of these
theories he asserts on appeal,[4] we will
address his challenge under all three theories in the interest of justice.

The
second and third theories require a showing of some coercive law enforcement
activity based upon an objective assessment of police behavior.  Id. at
171.  Appellant was incarcerated for a prior, unrelated offense.  Appellant
made the statement shortly after the weapon was discovered, and was not
responding to questioning.  The mere fact that appellant was handcuffed does
not constitute interrogation, much less coercion.  Cf. Rhode Island v. Innis,
446 U.S. 291, 301B02, 305 (1980) (handcuffing suspect and placing him in
backseat of patrol car were acts merely attendant to arrest and custody, rather
than interrogative).  We therefore decline to hold that coercive law
enforcement activity occurred under the circumstances presented here.  Further,
as to appellant=s contention based on Lykins, because he did not make
the statement in response to questioning, and the record is devoid of any
evidence that he was instructed or ordered to do so, we cannot say that the
statement was compelled by the TDCJ=s compliance and obedience
requirements.  Appellant=s reliance on Lykins is therefore misplaced.  See 784
S.W.2d at 37.

The
first theory does not require official coercion and focuses on the state of
mind of the defendant, i.e. whether the statement was freely and voluntarily
made without compulsion or persuasion.  Oursbourn, 259 S.W.3d at 172. 
Courts have considered the following factors in determining whether statements
are involuntary under articles 38.21 and 38.22: 








(1) the suspect was ill and on medication and that
fact may have rendered his confession involuntary; (2) the suspect was mentally
retarded and may not have Aknowingly, intelligently and voluntarily@ waived his rights; (3) the suspect Alacked the mental capacity to understand
his rights@; (4) the suspect was intoxicated, and he Adid not know what he was signing and
thought it was an accident report@; (5) the suspect was confronted by
the brother-in-law of his murder victim and beaten; (6) the suspect was
returned to the store he broke into Afor questioning by several persons
armed >with six-shooters.=@

Id. at 172B73 (internal citations omitted).  No
such circumstances are present here.  On the contrary, the exculpatory and spontaneous
nature of appellant=s statement, in light of the circumstances in which it was
given, suggests that he made it voluntarily in an attempt to avoid criminal
liability.  We therefore decline to hold that appellant=s statement to Sergeant Mora was
involuntary under the circumstances.  To hold otherwise would render
involuntary virtually any statement made by a handcuffed inmate.

Having
overruled both of appellant=s contentions, we conclude that the trial court did not abuse
its discretion by admitting the challenged statement.

2.  Appellant=s admission to
counsel substitute

The State called appellant=s counsel
substitute, Ernie Miles, as a rebuttal witness.  Miles described counsel
substitutes as Aadvocates for the offender@ in the TDCJ disciplinary
process.[5] 
Miles testified that at the disciplinary hearing, appellant stated that he had
been in possession of the weapon.  Appellant objected to Miles= testimony,
claiming his statement was confidential and involuntary.  Appellant now
elaborates on that assertion of confidentiality by contending that the alleged
statement was protected by attorney-client privilege due to the nature of the
relationship between himself and Miles.








As a threshold matter, for appellant to prevent Miles from
testifying by invoking the attorney-client privilege, appellant had to
establish that Miles was a licensed attorney, or that appellant reasonably
believed as much.  See Tex. R.
Evid. 503(a)(3); Austin v. State, 934 S.W.2d 672, 674 (Tex. Crim.
App. 1996) (en banc) (stating that person seeking protection of privilege has
burden of establishing its existence); Strong v. State, 773 S.W.2d 543,
549 (Tex. Crim. App. 1989) (stating that Rule 503(a)(3) requires person=s belief that
individual was licensed attorney to have been reasonable).  Although Miles
admitted acting as an advocate for appellant, the record contains no evidence
regarding whether she was an attorney, or whether appellant held the belief,
reasonable or otherwise, that she was an attorney.  On the contrary, appellant
testified that he did not even remember Miles.  Although appellant=s appellate
counsel has appended information from TDCJ=s Offender
Orientation Handbook coinciding with Miles=s description of
counsel substitute=s role as an advocate, that information is
not part of the data contained in the record.  See Llamas v. State, 12
S.W.3d 469, 471 (Tex. Crim. App. 2000) (stating that appellate court analyzes
harm based on information contained in the record from the trial court).  We
therefore express no opinion as to whether that information establishes that
appellant reasonably believed Miles was a licensed attorney, and we hold that
the record fails to show that appellant held such a belief.








But even if there were evidence that Miles either was a
licensed attorney or appellant reasonably believed she was, appellant also had
the burden of establishing that the alleged statement was a Aconfidential@ communication,
such that the challenged testimony was subject to the attorney-client
privilege.  Tex. R. Evid. 503(a)(5)
(confidential communication is one Anot intended to be
disclosed to third persons other than those to whom disclosure is made in
furtherance of the rendition of professional legal services to the client or
those reasonably necessary for the transmission of the communication@); see also
Carmona v. State, 941 S.W.2d 949, 954 n.6 (Tex. Crim. App. 1997) (en banc);
Austin, 934 S.W.2d at 674.  Miles testified that initially appellant did
not say anything about possessing the weapon, but later admitted at his
disciplinary hearing that he possessed the weapon for protection.   The record
does not disclose the nature of this statement, other than that it was made at
the disciplinary hearing.  It is unclear whether the statement was made in
confidence to Miles or was an oral statement given by appellant at the
hearing.  Moreover, appellant=s alleged disclosure of the same statement
to Sergeant Mora prior to his statement at the hearing suggests that he did not
intend the latter communication to be confidential.  See Strong, 773
S.W.2d at 552 n.11; see also U.S. v. Melvin, 650 F.2d 641, 645B46 (5th Cir.
1981).  Therefore, even if we assume that the attorney-client privilege applied
to appellant and Miles=s relationship, we cannot say that the
challenged testimony was subject to the privilege, because appellant failed to
establish that the statement was intended to be confidential.  See State v.
DeAngelis, 116 S.W.3d 396, 404 (Tex. App.CEl Paso 2003, no
pet.); Manning v. State, 766 S.W.2d 551, 557B58 (Tex. App.CDallas 1989), aff=d, 773 S.W.2d 568
(Tex. Crim. App. 1989).

Finally, because appellant was not required to make a
statement or even attend the disciplinary hearing under TDCJ=s rules and procedures, we disagree
with his contention that the circumstances compelled him to admit that he had
possessed the weapon.  See Lykens, 784 S.W.2d at 36B37; Disciplinary Rules & Procedures for Offenders at 12B13.

Having found that neither the attorney-client privilege nor
other circumstances indicate that appellant=s statement was
involuntarily given, we conclude that the trial court did not abuse its
discretion in admitting the statement.  We overrule appellant=s third issue.

C. 
Evidence of Gang Affiliation








In his fourth issue, appellant contends the trial court
abused its discretion by refusing to grant a mistrial during the punishment
phase after the State attempted to link him to gang activity through the
testimony of Sergeant Briseno.  When Sergeant Briseno began testifying that his
duties included investigating gangs and acting as a Spanish interpreter,
appellant objected on relevancy grounds but was overruled.  Sergeant Briseno
then testified that he had interpreted a letter which was connected to a
stabbing, though he never connected that incident to gang activity.  Appellant
objected again and a hearing was held outside the jury=s presence, in
which appellant argued that the State had failed to connect the evidence to
appellant.  The trial judge sustained appellant=s objection on
hearsay grounds and instructed the jury to disregard the gang testimony, but
denied appellant=s motion for mistrial.  Appellant now
contends that the trial court=s refusal to grant a mistrial was an abuse
of discretion because (1) the gang evidence was irrelevant and violated
appellant=s First Amendment right of association, and (2) the
evidence of gang activity presented before the jury resulted in incurable
prejudice.  We review the trial court=s decision for an
abuse of discretion, keeping in mind that a mistrial is only required in
extreme circumstances where the prejudicial nature of the objectionable matter
presented is incurable.  Hawkins v. State, 135 S.W.3d 72, 76B77 (Tex. Crim.
App. 2004).

Here, because the trial court sustained appellant=s objection to
evidence of gang affiliation and instructed the jury to disregard that
evidence, we must determine whether the admission of the evidence was so
harmful that the case must be retried.  See Mosley v. State, 983 S.W.2d
249, 259 (Tex. Crim. App. 1998) (en banc); see also Hawkins, 135 S.W.3d
at 77; Austin v. State, 222 S.W.3d 801, 815B16 (Tex. App.CHouston [14th
Dist.] 2007, pet. ref=d).  To do so, we balance three factors:
(1) the prejudicial effect of the evidence, (2) curative measures, and (3) the
likelihood of the same punishment being assessed absent the erroneous
admission.  See Mosley, 983 S.W.2d at 259; see also Hawkins, 135
S.W.3d at 77 (adopting Mosley factors to evaluate whether the trial
court abused its discretion in denying a mistrial and tailoring the factors to
apply in a punishment context); Austin, 222 S.W.3d at 815B16 (applying Mosley
factors where instruction to disregard was given after the State elicited
testimony barred by trial court=s ruling on motion in limine).  If, as
here, the court has instructed the jury to disregard improper evidence, we
presume that the jury has followed the instruction, unless that presumption is
rebutted by contrary evidence.  Thrift v. State, 176 S.W.3d 221,
224 (Tex. Crim. App. 2005).  In determining whether the erroneous evidence
mandates a new trial, we look at the facts and circumstances of the case to see
if the trial court's instruction cured the admission.  Ladd v. State, 3
S.W.3d 547, 567 (Tex. Crim. App. 1999).








Here, the prejudicial effect was minimal because nothing
linked appellant to the general evidence presented on gang activity.  Because
the trial court instructed the jury to disregard Sergeant Briseno=s gang testimony,
we presume the jury followed the instruction, curing any error in admitting the
evidence.  See Thrift, 176 S.W.3d at 224.  Moreover, appellant
points to no evidence rebutting that presumption.  Thus, the first two factors,
addressing prejudicial effect and curative measures, weigh in favor of the
State.  

In analyzing the third element, we consider the sentence
imposed, the nature of the offense, and appellant=s prior
convictions to determine the likelihood the same punishment would have been
assessed absent the inadmissible evidence.  See Hawkins, 135 S.W.3d at
85.  Here, the offense was possession of a deadly weapon, committed while
appellant was serving a lengthy sentence from a prior conviction for aggravated
sexual assault of a child.  His prior conviction and the nature of the offense
are more likely reasons for his sentence, which was in the bottom third of the
statutory range (eight years= imprisonment, where the potential range
was two to twenty).  See id.  We find that this third factor weighs in
favor of the State.

Having found that all three factors weigh in the State=s favor, we
conclude that, under the circumstances, the trial court did not abuse its
discretion by denying appellant=s motion for mistrial.  Appellant=s fourth issue is
overruled.

Having overruled all of appellant=s issues, we affirm the trial court=s judgment.

 

 

 

/s/        Leslie B. Yates

Justice

 

 

Panel
consists of Justices Yates, Seymore, and Boyce.

Do
Not Publish C Tex. R. App.
P. 47.2(b).









[1]  Sergeant Mora prepared two reports following the
incident, one soon thereafter and the other four-and-a-half months later.  In
the first report, he neglected to mention finding the weapon inside appellant=s shoe but reported finding it inside a plastic
glove.  In the second report, he recounted finding the weapon inside appellant=s shoe (but did not mention the plastic glove) and
claimed that the weapon had a cloth handle, rather than a plastic one as he
stated in his first report and at trial.





[2]  Sergeant Mora admitted that neither of his reports
recounted this admission.





[3]  ACounsel
substitutes are non-uniformed employees who represent offenders in disciplinary
proceedings . . . .@  Tex. Dep=t.
of Crim. Justice, Correctional Insts. Div., Disciplinary Rules & Procedures
for Offenders 9 (Jan. 2005); see also Tex. Dept. of Crim. Justice, Correctional
Insts. Div., Offender Orientation Handbook 51 (Nov. 2004).





[4]  AThe brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.@  Tex. R. App. P. 38.1(i).





[5]  Miles also stated that counsel substitutes accompany
offenders to their disciplinary proceedings, answer their questions, and ensure
their witnesses and documents are present during the disciplinary process. 
Both the Texas Department of Criminal Justice=s Offender Orientation Handbook, and its Disciplinary Rules
and Procedures for Offenders, support Miles=s description of the counsel substitute=s role.  See Tex. Dep=t.
of Crim. Justice, Correctional Insts. Div., Offender Orientation Handbook at 51; Tex. Dep=t.
of Crim. Justice, Correctional Insts. Div., Disciplinary Rules & Procedures
for Offenders at 10.