724 P.2d 23

**Curtis Nelson BISHOP, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA, and the Honorable Richard N. Roylston, Judge of the Superior Court, Respondents;**

**The State of Arizona, Real Party in Interest.**

**No. 18548–SA.**

Supreme Court of Arizona, En Banc.

June 24, 1986.

Reconsideration Denied Sept. 9, 1986.

Natman Schaye, Tucson, for petitioner.

Stephen D. Neely, Pima County Atty. by Louis M. Spivack, Deputy County Atty., Tucson, for State.

FELDMAN, Justice.

Defendant brings this special action proceeding[1] to prohibit the trial court from permitting the state to call his former counsel as a witness at a retrospective competency determination. The issue presented is whether the state can require a criminal defendant's former counsel to testify on the issue of defendant's past competency to stand trial or to plead. We have accepted jurisdiction because this is an important issue of first impression in the state of Arizona. *King v. Superior Court*, 138 Ariz. 147, 673 P.2d 787 (1983). We have jurisdiction under Ariz. Const. art. 6, § 5 and A.R.S. § 12–120.24.

## FACTS

Bishop (defendant) was charged with first degree murder in 1980. His mental problems, including competency to stand trial, were in question from the beginning of the case. Defendant was represented by appointed counsel, Michael Addis, who made the appropriate motion to have defendant's competence to stand trial evaluated under Rule 11, Ariz.R.Crim.P., 17 A.R.S.[2] A hearing was held on the question despite defendant's refusal to attend. The court determined that defendant was competent to stand trial. Eventually, defendant entered into a plea bargain, pleading guilty to the charge of first degree murder in return for the state's agreement to the imposition of a life sentence. The plea bargain was approved by the court and a life sentence was imposed.

On subsequent appeal, we determined that the record did not establish that the defendant had voluntarily waived his constitutional right to be present at his competency hearing. *See State v. Bishop*, 139 Ariz. 567, 570, 679 P.2d 1054, 1057 (1984). We held, therefore, that there had never been a valid determination of defendant's competency to plead guilty, stating that "we will not uphold a guilty plea, where competency has been a valid issue, absent a proper finding of competency." *Id.* at 571, 679 P.2d at 1058. In that appeal, defendant sought to have this court set aside or reverse the judgment and vacate the plea. We did not do so and remanded the case with instructions that the trial court make a retrospective inquiry into defendant's competency to enter a plea in 1982. *Id.* The mandate required the trial judge to hear the competency issue and to vacate the plea if he found the defendant had not been competent to enter it. *Id.*

The procedural steps which followed are not relevant to this proceeding. In essence, the only issue before us is whether,

---

1. In Arizona relief previously obtained through writs of prohibition, mandamus or certiorari is now obtained through a procedure known as "special action". *See* Rule 1, Arizona Rules of Procedure for Special Actions, 17A A.R.S.

2. Rules of Criminal Procedure will be referred to as Rule ——.

at the hearing at which the trial judge will make the retrospective determination of competency, defendant's former counsel, Mr. Addis, may be called to testify on the issue of defendant's past competency. The respondent trial judge held that former counsel is required to testify. Claiming that the trial court exceeded its authority in so doing (*see* Rule 3, Ariz.R.P.Spec.Act., 17A A.R.S.), defendant asks that we vacate the order.

The solution to this difficult problem requires us to consider the purpose of Rule 11, its relationship to the attorney-client privilege, and matters of public policy.

## DUE PROCESS AND THE COMPETENCY HEARING

### 1. *The Nature of the Inquiry into Competence*

■ The "failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent ... deprives him of his due process right to a fair trial." *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975); *see also State v. Ferguson*, 26 Ariz. App. 285, 286–87 n. 2, 547 P.2d 1085, 1086–87 (1976). This rule is based on principles fundamental to our adversary system of justice. *Drope*, 420 U.S. at 172, 95 S.Ct. at 904. Our judicial system assumes that truth and justice result from the clash of adversaries. The adversaries, however, are not lawyer against lawyer but party against party. The United States Constitution guarantees more than a right to counsel. The fundamental guarantee of the sixth amendment is the defendant's right to control and participate in his defense.

The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor." ...

It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy .... This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative.

*Faretta v. California*, 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533–34, 45 L.Ed.2d 562 (1975) (citations omitted).

Of course, as a corollary to this rule the defendant must be able to participate in or assist counsel in the conduct of his defense. It is also necessary that the defendant have the mental ability to control the decision-making process. It is the defendant, "with the help of counsel, [who must] rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Brady v. United States*, 397 U.S. 742, 750, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970). The same rule, of course, obtains with regard to other essential decisions such as whether the defendant should waive his right to counsel, *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Obviously, the defendant can neither exercise his right to participate and assist in his defense, nor make the final decisions relating to the conduct of his defense if he is mentally incompetent to engage in these activities.

■ Consequently, the law recognizes that a defendant cannot plead or be tried while incompetent. *Drope v. Missouri, supra; State v. Bishop, supra.* The Supreme Court has developed a dual analysis to determine defendant's competency to stand trial or plead. The inquiry is whether defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).

### 2. *The Rules*

Our Rules of Criminal Procedure provide a framework for making the necessary de-

termination of competency. Rule 11.1 states the *Dusky* test. *State v. Contreras,* 112 Ariz. 358, 542 P.2d 17 (1975). Rule 11.2 allows any party to move for an examination into either defendant's competency for trial or his mental state at the time of the offense. These are distinctly different inquiries, one leading to a determination of whether the trial can proceed at all, and the other to the trial defense of insanity. *See* Pizzi, *Competency to Stand Trial in Federal Courts: Conceptual and Constitutional Problems,* 45 U. CHI. L. REV. 21 (1977).[3]

■■■ Rule 11.3(a) requires that a competency hearing must be held if reasonable grounds exist to support a request. *State v. Salazar,* 128 Ariz. 461, 462, 626 P.2d 1093, 1094 (1981). Due process requires the judge to raise the issue and hold the hearing *sua sponte* if it appears to the judge at any time that competency is in doubt. *Drope v. Missouri,* 420 U.S. at 180, 95 S.Ct. at 908; *State v. Bradley,* 102 Ariz. 482, 486, 433 P.2d 273, 277 (1967); *State v. Messier,* 114 Ariz. 522, 525, 562 P.2d 402 (App.1977).

The rules provide detailed procedures for compulsory examination by mental health experts, while preserving the important distinction between the insanity defense and the question of competency to stand trial. *See* Rule 11.3. Information which the examiner obtains in connection with the former is excluded from trial because of the fifth amendment. *See* Rule 11.3(e)(3). Similarly, statements or summaries obtained by the examiner and pertaining to mental capacity at the time of the *offense* are provided only to the defendant. *See* Rule 11.4; *State v. Ramirez,* 116 Ariz. 259, 269, 569 P.2d 201, 211 (1977) (error for physician to testify as to statements made by defendant during examination); *State v. Gonzales,* 111 Ariz. 38, 41, 523 P.2d 66, 69 (1974). The same concern is the subject of

Rule 11.7, which provides a privilege—"No evidence of any kind obtained under these provisions shall be admissible at any proceeding to determine guilt or innocence ..." *See State v. Freeman,* 114 Ariz. 32, 559 P.2d 152 (1976).

Rule 11 thus highlights the unique and distinctive nature of the hearing which determines competency to stand trial. Its sole purpose is to determine whether defendant has sufficient mental ability to allow the adversary system to operate properly. Again, this is based on society's decision that the adversary system best promotes the interests of justice; fundamental fairness requires that a defendant be armed with some minimal awareness of reality before the power of the state is exerted against him. *See Drope, supra.*

### 3. *Unique Nature of a Competency Hearing*

Exposing the distinctions between competency to stand trial and the trial defense of incompetency to the charge (insanity) does much to resolve the question before us. Our analysis indicates five significant distinctions between the two inquiries into competency. These distinctions convince us that a hearing on competency for trial is qualitatively different from and suspends momentarily the ordinary nature of a criminal case.

### A. *Nonadversarial Nature of the Inquiry*

Because defendant cannot be tried at all if he is unable to assist in his defense, the only purpose for the determination of defendant's competency to stand trial is to see whether the adversarial process can be commenced or continued. Pizzi, *supra,* 45 U. CHI. L.REV. at 56–59. As Professor Pizzi points out, therefore, the competency hearing has an essentially non-adversarial

---

**3.** Of course, the test for insanity (responsibility) as a defense to the charge is quite different from the inquiry before us. A defendant may well be insane under the M'Naughton rule and yet be capable of assisting counsel, or he may lack the ability to assist counsel even though he was

sane under the M'Naughton test. The tests being different, there is "very little relationship between a defendant's competency to stand trial and his criminal responsibility for the crime." Pizzi, *supra,* 45 U. CHI L. REV. at 38.

objective. *Id.* There are no established positions. The usual defendant will always wish to be found not guilty of the crime charged, but he may not always wish to be found incompetent to stand trial. This would be especially true in situations where incompetency to stand trial may result in a longer deprivation of liberty than trial and conviction. In other cases, where the charge is more serious, incompetency to stand trial may result in a delay which sometimes would benefit the defendant and other times would help the state. What is a "favorable disposition" for either "side" on questions of competency will, therefore, vary with the facts of each case. *Id.* at 27–29, 55–56.

## B. *The Nature of Counsel's Duty*

We think it obvious, also, that the role of defense counsel at a competency hearing is different from the role of defense counsel at other proceedings.

> If the defense attorney's primary responsibility is to protect the defendant's exercise of his constitutional rights, what adversarial position should the attorney assume when the issue being determined is the ability of the defendant to exercise his rights? ...
>
> ... Counsel has no obligation to see that the court makes what counsel personally believes to be the correct ruling with respect to the suppression of evidence or the determination of probable cause. It could be argued similarly that the correct determination of competency is the responsibility of the court, not defense counsel and therefore, if he believes that a plea is in his client's best interest, counsel should take the adversarial position that his client is competent. The problem with this argument is that defense counsel has a responsibility for the correct determination of the competency issue that he does not have with respect to other issues. A trial court's erroneous rulings in favor of the defendant on issues other than competency do not adversely affect the defendant's constitutional rights; instead the court may simply be giving those rights a broader

sweep than it should. But if the court erroneously concludes that the defendant is competent, the court's decision goes directly to the defendant's ability to waive or assert his constitutional rights. Although it is the court's responsibility to determine the issue of competency, counsel has the obligation, flowing from his duty to protect his client's rights, to see that the issue is decided correctly. As with the question of raising the competency issue, counsel is not free to chart an adversary course at the hearing based on his view of the client's best interests.

Pizzi, *supra*, 45 U. CHI. L. REV. at 58.

## C. *Necessity*

It seems to us that there is yet a third important and unique aspect of a hearing on competency to stand trial. On the issues to be determined at such a hearing, defense counsel, and defense counsel alone, is often the most knowledgeable witness. In the case at bench he appears to be the only witness; due to the passage of time the mental health experts are unable to say with any certainty whether defendant was competent in the past. The determination to be made is whether the defendant had both the ability to assist his lawyer and a rational and factual understanding of the charges and proceedings at the time he pleaded guilty in 1982.

Who but defense counsel is in a better position to testify to the ultimate issues? In fact, when we consider that all other persons have limited and restricted access to defendant, it is obvious that defense counsel always is a very logical witness on the issue. The trial judge and appointed mental health experts who examine a defendant have only limited time to interview or observe him and do so under strained or formal circumstances. It is counsel who spends time with a defendant in a manner which allows observation of the facts necessary to determine the issues to be decided at the competency hearing. Unlike any of the adversarial issues, on the question of competency to comprehend the proceedings

and assist the attorney, the defense lawyer is often the most cogent witness.

### D. *The Role of the Judge*

██ Guilt or innocence of the charge is usually decided by the jury, and most aspects of the trial are shaped to that expectation. However, the determination of competency to stand trial is always and exclusively a question for the court. *See* Rule 11.5; *United States v. Davis,* 365 F.2d 251, 254–55 (6th Cir.1966). Further, although the judge may appoint mental health experts to assist him in his determination, he is not bound by their opinions; the determination of both fact and law is his. Note, *Incompetency to Stand Trial,* 81 HARV. L. REV. 454, 470 (1967). Oliver, *Judicial Hearings to Determine Mental Competency to Stand Trial,* 39 F.R.D. 537, 545–46 (1965). The judge's duty is to evaluate the data and determine "whether the defendant's functional impairment is cumulatively so great that he fails to meet the minimum performance level necessary for the satisfaction of due process and the preservation of the integrity of the criminal adversary system." Note, *The Identification of Incompetent Defendants: Separating Those Unfit for Adversary Combat from Those Who Are Fit,* 66 KY. L.J. 666, 675 (1978). There are a number of criteria which the judge may consider in making the determination. *See id.* at 682–91; *State v. Guatney,* 207 Neb. 501, 511–13, 299 N.W.2d 538, 545 (1980) (Krivosha, C.J., concurring); *State v. Lawrence,* 368 So.2d 699, 701 (La.1979).

Competency hearings also differ from those cases in which trial by jury is waived and the judge is the finder of fact. On questions of competency to stand trial, not only is the judge a finder of fact, he is also a de facto witness who may take into consideration his own observations of the defendant. *State v. Messier,* 114 Ariz. at 526, 562 P.2d at 406.

The factors identified compel us to conclude that the court should be able to utilize counsel's knowledge whenever the question of competency to stand trial is properly raised. Such a result, however, raises the danger that defense counsel will be put in a position where he may be required to testify about his communications with his client. We turn, then to examine the question of privilege.

### ATTORNEY–CLIENT PRIVILEGE

In general, in Arizona

... opinion ... testimony of lay witnesses [is admissible] where such opinions are supported by personal observations or knowledge of the defendant's past conduct and history. [citations omitted] In Jones on Evidence, the rule in regard to the admissibility of the testimony of nonexpert witnesses is set forth as follows:

> "The opinion of a nonprofessional witness is not admissible, however, unless it is shown to be based upon the witness's own knowledge and observation of the person's appearance; and it is generally held that, before expressing an opinion, the witness must state the facts and circumstances on which his opinion is founded. ..." 2 Jones on Evidence, § 14.7 at 603.

*State v. Overton,* 114 Ariz. 553, 555, 562 P.2d 726, 728 (1977). Does lay testimony from defense counsel as to defendant's ability to assist in his own defense violate the attorney-client privilege?

Defendant claims that testimony from Mr. Addis is an impermissible intrusion into the attorney-client privilege. *See* A.R.S. § 13–4062(2). The state argues that it has no intention of asking Mr. Addis to reveal any confidential client communication. Instead, it avows, it intends only to ask Mr. Addis to describe defendant's behavior, his ability to respond to stimuli and his ability to respond to questions. Based upon these observations, the state then seeks Addis' opinion of defendant's competency. In response, it is argued that effective cross-examination, a basic right, is denied because of the privilege.

While few cases have dealt with this issue, the weight of authority supports the view that an attorney may testify at a

competency hearing without violating the attorney-client privilege so long as the testimony does not include the substance of confidential communications. *United States v. Kendrick*, 331 F.2d 110, 114 (4th Cir.1964) (objectively observable particularizations of the client's demeanor and attitude not within the privilege if made at a time when neither lawyer nor client manifested any reason to suppose they were confidential); *see also Darrow v. Gunn*, 594 F.2d 767 (9th Cir.1979), *cert. denied* 444, U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64; *United States v. David*, 511 F.2d 355, 360 (D.C.Cir.1975); *Clanton v. United States*, 488 F.2d 1069, 1070 (5th Cir.1974), *cert. denied* 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1975); *Howell v. United States*, 282 F.Supp. 246 (N.D.Ill.1968), *aff'd* 442 F.2d 265 (7th Cir.1971); *United States v. Tom*, 340 F.2d 127 (2nd Cir.1965); *Jones v. District Court*, 617 P.2d 803, 808 (Colo. 1980). None of these cases provides a satisfactory response to the cross-examination issue raised by defendant's present counsel. Some authority also supports the view that counsel may not testify.

> If trial counsel in a criminal case could be called by the Government and asked to give an opinion as to the accused's competency and ability to assist in the defense, he could necessarily also be asked for the factual data upon which he premised his opinion. These questions would open to inquiry by the Government the entire relationship between the accused and his counsel. Such revelations would be a violation of the attorney-client privilege and would also invade an accused's right to counsel in the trial of the criminal charge.

*Gunther v. United States*, 230 F.2d 222, 223–224 (D.C.Cir.1956). "Any expression as to the client's mental competency necessarily embrace[s] more than facts observable by anyone; it comprehend[s] conclusions drawn in the course of an association that is uniquely regarded in the law." *United States v. Kendrick*, 331 F.2d at 115 (Sobeloff, J., specially concurring with remand determination only). We regard this as being a basically correct statement.

Even though counsel may be asked for no more than an opinion based on observation, *see* Rule 701, Ariz.R.Evid., 17A A.R.S., it defies reality to pretend that the lawyer has formed opinions on competency without relying upon discussions with the defendant. Counsel may observe defendant's physical behavior, but certainly his contacts with the defendant will ordinarily consist of discussion. Questions posed by counsel, responses made by defendant and information conveyed by defendant necessarily form much of the foundation for defense counsel's opinion of his client's competency. We acknowledge that permitting the witness to relate the ultimate opinion without permitting cross-examination on the basis for the opinion constricts cross-examination very close to its permissible limits.

■ Nonetheless, we will allow the testimony for several reasons. Observation of behavior is not a communication and therefore is not protected by the privilege. *See Granger v. Wisner*, 134 Ariz. 377, 379–80, 656 P.2d 1238, 1240–41 (1982); McCORMICK, EVIDENCE § 89 at 213 (3d ed. 1984). More importantly, the essential distinctions between a hearing on competency to stand trial and a determination of guilt or innocence mandate the result we reach. Given the different nature of the judicial inquiry—the diminished adversarial nature of the proceeding, the need for the testimony and the different duties and functions of counsel and court—there is an essential difference in what is expected of counsel. We believe that as an officer of the court, counsel has a duty at a Rule 11 hearing to aid the judge in reaching a correct decision on the issue of whether the adversarial proceedings may be commenced or continued.

■ We therefore conclude that, in a competency hearing, the judge may call upon both counsel as officers of the court to provide whatever conclusions and opinions they may have, together with so much of the supporting facts as may be obtained

without violating either the attorney-client privilege or the confidentiality provided to attorney's work product.[4] In some cases, this may mean very little information will be available, while in others a great deal may be obtained. Whatever is available should be at the court's disposal. The judge will determine whether it is necessary to seek assistance from counsel. If the testimony is not essential, it is better to dispense with counsel's help simply because the act of testifying may damage the relationship between lawyer and client.

We hold, therefore, that the court may call defense counsel as a witness at the retrospective competency hearing to be held under the mandate issued in *State v. Bishop, supra.* Counsel may be examined to the extent indicated in this opinion. We do not address in this opinion the question of counsel's competency as a witness in the truly adversarial portions of the trial. Relief is denied.

GORDON, V.C.J., and HAYS, J., concur.

HOLOHAN, C.J., concurs in the result.

CAMERON, J., did not participate in the determination of this matter.

---

**4.** We note also that in a retrospective inquiry with new counsel, such as that in the case at bench, raising the question of competency is, to some extent, an attack on the quality of the former lawyer's representation, because it was his duty to call his client's incompetency to stand trial or plead to the attention of the court. In such cases, concern about intrusions into the attorney-client relationship and the privilege is diminished if the incompetency claimed to exist was of the type which should have been recognized by the former counsel. Against such a charge, the attorney has a right to defend himself and the defendant cannot use the attorney-client privilege as a sword to block the inquiry into the issue which he has raised. Pizzi, *supra,* 45 U. CHI. L. REV. at 60.