781 P.2d 581

**STATE of Arizona, Appellee,**

v.

**Curtis Nelson BISHOP, Appellant.**

**No. CR–87–0236–AP.**

Supreme Court of Arizona,
In Banc.

July 3, 1989.

As Amended on Denial of Reconsideration
Nov. 7, 1989.*

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser, Asst. Atty. Gen., Phoenix, and Stephen D. Neely, Pima County Atty. by Louis M. Spivack, Deputy Pima County Atty., Tucson, for appellee.

Karp, Stolkin & Weiss, P.C. by Natman Schaye, Tucson, for appellant.

FELDMAN, Vice Chief Justice.

This case is before us for the third time. The issue is whether Curtis Nelson Bishop was competent to plead guilty to murder in 1982. In *State v. Bishop*, 139 Ariz. 567, 571, 679 P.2d 1054, 1058 (1984) (*Bishop I*),

* Gordon, C.J., of the Supreme Court, was not present and did not participate in the determination of this matter.

we remanded the case for a new hearing on defendant's competency. In *Bishop v. Superior Court*, 150 Ariz. 404, 407–08, 411, 724 P.2d 23, 26–27, 30 (1986) (*Bishop II*), we held that because a competency hearing is non-adversarial, the state could call defendant's former counsel as a witness. We now review the trial court's post-hearing determination that defendant was competent. We have jurisdiction under Ariz. Const. art. 6, § 5(3), and A.R.S. §§ 13–4031 and –4035.

## FACTS AND PROCEDURAL HISTORY

*Bishop I* and *Bishop II* completely state the facts. Those relevant to our present determination follow:

Defendant had a chaotic childhood. His father, a drug addict, abandoned the family when defendant was five years old. His mother was violent and abusive and beat him. She often came home drunk with various boyfriends and had sexual relations with them in front of defendant. In early life, defendant was severely hearing impaired; he did not learn to speak until he was more than five years old and did not learn to read. He has a full scale IQ of 77, compared to an average of 90 to 110. Thus, defendant's IQ places him within the range of borderline intelligence.

This court has the unfortunate task of reviewing too many cases involving abused children. Defendant's circumstances are among the worst. In his case, parents and society produced a physically impaired, mentally retarded, schizoid adolescent—angry and dangerous.

Unable to adjust to public school, defendant spent his time in outpatient and residential schools and facilities for the mentally ill. He often was depressed, suicidal, and subject to fits of violence. Defendant was eighteen years old and living in a residential treatment facility when he murdered one of the counselors. The briefs filed by both sides in *Bishop I* indicate the trial court could well have found the killing to be cruel, heinous, and depraved.[1] After his arrest for the murder, defendant twice

attempted to kill himself in the Pima County Jail. He also had other violent episodes during his one and one-half years in jail.

After a Rule 11 hearing in 1982, the trial court found defendant competent to stand trial. *See* Rule 11, Ariz.R.Crim.P., 17 A.R.S. Without further inquiry as to competency, on June 17, 1982, defendant entered a plea of guilty to first degree murder.

In *Bishop I*, we inquired into defendant's competency to plead guilty as distinct from his competency to stand trial. We remanded his case for a retrospective competency hearing at which the trial judge was to determine whether in 1982 defendant was competent to plead guilty. 139 Ariz. at 571, 679 P.2d at 1058. On remand, the trial court found him competent to plead guilty. Defendant appeals, and we now review the finding of competency.

## DISCUSSION

### A. Standard of Review

■ On review, we look only to see whether reasonable evidence supports the trial court's finding. *State v. Sims*, 118 Ariz. 210, 215, 575 P.2d 1236, 1241 (1978). Thus, we consider the facts in a light most favorable to sustaining the trial court's finding. *See State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983), *cert. denied*, 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984).

### B. Relevant Principles of Law

Applying the standard of *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), we have held that even if the trial court has found a defendant competent to stand trial, it must apply a different standard to find him competent to waive his right to an attorney. *See State v. Decello*, 111 Ariz. 46, 48–49, 523 P.2d 74, 76–77 (1974). Indeed, in *Decello* we quoted the ninth circuit's explanation of *Westbrook* and suggested that the test for competency to waive constitutional rights and

---

1. Under A.R.S. § 13–703(F)(6), a finding that a killing was cruel, heinous, or depraved is an aggravating circumstance making a defendant eligible for the death penalty.

plead guilty must be greater than the test for competency to stand trial. *Decello,* 111 Ariz. at 49, 523 P.2d at 77 (citing *Sieling v. Eyman,* 478 F.2d 211, 214 (9th Cir.1973)).

A defendant is not competent to plead guilty if the mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and understand the nature of the consequences of his plea. *Sieling,* 478 F.2d at 215 (quoting *Schoeller v. Dunbar,* 423 F.2d 1183, 1194 (9th Cir. 1970) (Hufstedtler, J., dissenting) (footnote omitted)).

### C. Evidence of Incompetency

Defendant argues that the evidence at the retrospective competency hearing overwhelmingly required a finding that he was incompetent to enter a plea in 1982. He contends the experts who testified generally concluded he had been incompetent to plead in 1982 because he had neither the intelligence, experience, nor functional ability to appreciate his alternatives, to select among them in a rational manner, and to choose the best alternative. He points out the uncontradicted evidence that in 1982 he was physically impaired, mentally retarded, emotionally labile, schizophrenic, and suffered from organic brain dysfunction. In addition, he was under extreme pressure, had an irrational fear of facing trial, and was extremely apprehensive of being painted a "reject." Given these cogent and uncontradicted facts, defendant contends, with vigor and some persuasive force, the evidence does not support the trial judge's conclusion of competency.

### D. Inferences from the Circumstances

If the foregoing recitation were the whole record, we would agree with defendant. However, viewed in the light most favorable to the trial judge's finding, the record sustains the judge's finding.

■ First, at the Rule 11 proceedings six to eight months before the entry of the guilty plea, the experts agreed defendant was competent to assist his counsel. Although competency to stand trial is a lower standard than competency to enter a plea,

the fact that the mental health experts found defendant competent for the lesser standard is of some evidentiary weight on defendant's competency to waive his rights. *See Decello,* 111 Ariz. at 49, 523 P.2d at 77 (psychiatrist agreed defendant's competency to assist defense is some evidence of competency to waive jury).

Second, defendant's former lawyer testified at the retrospective competency hearing that he believed at the time defendant was competent to plead. Although the lawyer testified that at the time he did not know competency to plead was a higher standard, we still believe his opinion has evidentiary value.

■ Third, defendant was questioned by the court at his competency hearing and responded; his comportment at the proceeding in 1982 has evidentiary value. M. UDALL & J. LIVERMORE, ARIZONA PRACTICE: THE LAW OF EVIDENCE § 41, at 67 (2d ed.1982) (demeanor of witness key part of factfinder's determination). The trial judge who presided at the retrospective competency hearing was the same judge who presided at all previous hearings. He was certainly entitled to rely on his own observations in reaching a conclusion. *See Bishop II,* 150 Ariz. at 409, 724 P.2d at 28. Included in these observations was defendant's comportment at the change of plea and sentencing proceedings in 1982. At those hearings, defendant disregarded his lawyer's advice and insisted on pleading guilty. He obviously was aware that part of the "deal" was he would receive life imprisonment instead of death. Defendant instructed his lawyer to tell the judge he wanted an isolation cell and to be shackled whenever he left the cell. This not only shows he understood the punishment, but he knew what prison was like and he wished to have some unusual treatment.

Nor, strange as it seems, do defendant's desires to be isolated and shackled necessarily indicate he was unable to choose what was best for him. One of the psychiatrists reported defendant is likely to become violent and a danger to society whenever he is faced with the necessity of relat-

ing with other people. Yates's Psychiatric Evaluation, May 15, 1985, at 8. In his years of incarceration, he has received the isolation he requested and has benefitted from it. *Id.* at 4, 6. He is more stable, emotionally and mentally, than when he was sentenced, and he has learned to read. *Id.* at 4, 8.

The sad but pragmatic reality of this case is that of all the persons involved with defendant both before and after the tragic killing, neither mental health expert, defense lawyer, prosecutor, judge, nor supreme court justice has suggested any better and realistically attainable alternative for defendant and society than what he requested for himself. Surely, in determining defendant's competency by retrospective hearing, with the benefit of hindsight, the trial judge could weigh this observation. We must give weight to the experience of an able trial judge when he perceives rationality in a defendant able to make a choice in his own best interest. *Sims,* 118 Ariz. at 215, 575 P.2d at 1241 (citing *Makal v. State of Arizona,* 544 F.2d 1030 (9th Cir.1976)).

### E. The Opinion Evidence

■ Bearing in mind the foregoing inferences the trial judge could have drawn, we turn to a particularized examination of the primary witnesses at the retrospective competency hearing.

#### 1. *Doctor Yates*

Dr. Alayne Yates's ultimate conclusion was that defendant had been incompetent to plead because of his inability to understand abstract concepts and his fear of exposing himself to trial. She stated, however, the mere fact a defendant wants to plead guilty does not equal incompetency. Reporter's Transcript (RT), Nov. 18, 1985, at 30, 34. Also, during his interview with

Yates, defendant knew his counsel, was aware of various abstract legal concepts such as the fact his lawyer was working toward some legal end, and was aware the judge was retiring and a new judge might slow the case down. *Id.* at 35–36, 41–42. In addition, Yates testified defendant understood his right to remain silent, knew the role of the jury, and gave a rather sophisticated answer as to why lawyers want to win cases. *Id.* at 50, 51, 54. This testimony supports the judge's determination that defendant was competent to plead guilty.

Also, in her written evaluation, Yates stated defendant "probably pled guilty and stated he understood his constitutional rights in order to avoid appearing unintelligent and, at a deeper level, to insure himself a stable, protected environment such as prison or the punishment embodied in being put to death." Yates's Psychiatric Evaluation, at 8. Assuming this was truly defendant's motivation, it does not demonstrate that defendant lacked the ability to make a reasoned choice or to understand the consequences of his plea. *See Sieling,* 478 F.2d at 215. Given the facts of the case, defendant had much to fear and little to gain from trial.[2] The question for the trial judge here was not defendant's subconscious motivation for pleading guilty but rather his competency to plead.

#### 2. *Doctor Kaszniak*

Dr. Alfred Kaszniak testified that defendant's low intelligence did not of itself impair his ability to make reasoned choices. Kaszniak also stated defendant's test results indicate neither gross impairment to his thinking and judgment ability, nor brain damage demonstrating inability to make a reasoned choice to plead guilty. RT, Sept. 23, 1985, at 21, 22. Kaszniak testified defendant was aware of the roles of judges,

**2.** At the Rule 11 proceedings in 1981, the parties presented little evidence on whether defendant was *M'Naghten* insane at the time of the murder. The evidence that exists indicates defendant was *M'Naghten* sane. *See* Psychological Evaluation of Gabriel Cata, M.D., Feb. 4, 1981, at 6–7. Also, none of the psychological reports since the Rule 11 hearing would substantiate an

insanity defense. Consequently, given the probability that defendant would be death eligible if his case went to trial, a plea bargain of some kind was in defendant's best interest. Defendant's present counsel does not claim former counsel was ineffective for having made a plea bargain.

jury, prosecutors, and defense lawyers. *Id.* at 41, 43. He further testified defendant's ability to make rational choices was not impaired by delusional thought patterns. Kaszniak indicated defendant could rationally desire to plead guilty and suffer the consequences resulting from such a plea. *Id.* at 91–92. Kaszniak also testified that nothing occurred during his one-hour evaluation of defendant that would have led him to believe defendant was substantially impaired in his ability to make the kinds of rational decisions he would need to plead guilty. *Id.* at 45.

During his testimony, Kaszniak reviewed Yates's psychiatric evaluation and reached different conclusions. *Id.* at 49–51. Indeed, Kaszniak testified defendant's responses to Yates's questions indicate some degree of abstract reasoning and some ability to look beyond the immediate concrete situation for other possible motivations. *Id.* at 51.

Kaszniak also testified defendant's childhood experiences possibly influenced his behavior, but nothing suggested the childhood experiences had specific influence on the quality of defendant's thought processes. *Id.* at 97. Again, this evidence supports the trial judge's finding that defendant was competent to plead guilty. While Kaszniak could not reach an ultimate conclusion on defendant's competency, the specifics of his testimony provide strong support for the trial judge's competency finding.

To summarize, the experts who testified at the retrospective competency hearing concluded that when defendant made the plea, he understood what a court was, the functions of judge, jury, prosecutor, and defense lawyer, and the nature of a trial. He had previous experiences with the legal system. He understood what it meant to plead guilty, stating it was a confession of guilt and punishment would follow.

### 3. *Evaluation*

■ The trial judge is not required to accept or reject expert testimony in toto and may rely on particular views of one or more experts even though he or she may disagree with the expert's ultimate conclusion. *State v. Zmich,* 160 Ariz. 108, 111, 770 P.2d 776, 779 (1989); *State v. Bay,* 150 Ariz. 112, 722 P.2d 280 (1986); *State v. Cano,* 103 Ariz. 37, 41, 436 P.2d 586, 590, (1968) (expert testimony is merely evidence the trier of fact considers and weighs). The trial judge may rely on some testimony from one expert and other testimony from another expert and draw his own conclusions. *Cf. id.*

We do not believe it necessary to summarize the remaining expert and lay testimony. Suffice it to say that the portions of the record described in this opinion provide more than adequate support for the trial judge's eventual finding of competency.

### CONCLUSION

The record contains substantial evidence supporting the conclusion that this defendant—even though impaired mentally, physically, and emotionally—understood his predicament and the charges he faced. He was aware of the prior conduct that led to the charges, and made a reasonable decision among the few available alternatives. The record is abundantly clear this defendant understood what it meant to plead guilty, what would happen if he made that choice, and chose the alternative he felt was best. With the benefit of hindsight, it is apparent the alternative chosen was reasonable.

The law requires only that a defendant be competent "to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea." *Sieling,* 478 F.2d at 215 (quoting *Schoeller,* 423 F.2d at 1194 (Hufstedtler, J., dissenting) (footnote omitted)). We cannot say the trial judge erred in finding that test satisfied.

With creditable zeal for the welfare of his client, defense counsel contends defendant would have done better to choose an alternative eventually enabling him to receive humane, compassionate, and rehabilitative treatment. Defendant's view of Arizona's penal and mental health systems may be less visionary. *See Arnold v. Ari-*

*zona Department of Health Services*, 160 Ariz. 593, 775 P.2d 521 (1989). In any event, the issue is not whether defendant chose the best alternative, only whether he was capable of making a reasonable choice.

The judgment of conviction is affirmed.

GORDON, C.J., CAMERON and MOELLER, JJ., and LLOYD FERNANDEZ, Chief Judge, Court of Appeals, concur.

HOLOHAN, J. (retired) did not participate in this decision; pursuant to Ariz.Const. art. 6, § 3, LLOYD FERNANDEZ, Chief Judge, Court of Appeals, Division Two, was designated to sit in his stead.