NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAMES F. LEWIS, *Appellant.*

No. 1 CA-CR 22-0289
FILED 10/26/2023

Appeal from the Superior Court in Maricopa County
No. CR2020-001368-001
The Honorable Laura J. Giaquinto, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defenders Office, Phoenix
By Cory Engle
*Counsel for Appellant*

James F. Lewis, Tucson
*Appellant*

---

**MEMORANDUM DECISION**

---

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**K I L E Y**, Judge:

¶1        A jury convicted James F. Lewis of two counts of aggravated DUI, a class 4 felony. Lewis now appeals his convictions and sentences pursuant to *Anders v. California*, 368 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Stating that her search of the record has identified no arguable issues for appeal, Lewis's counsel asks us to review the record for fundamental error. Lewis has filed a supplemental brief *in propria persona*. After reviewing the record and considering the arguments Lewis raises on his own behalf, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        This Court's obligation here "is to review the entire record for reversible error, viewing the evidence in the light most favorable to sustaining the convictions and resolving all reasonable inferences against" the appellant. *State v. Melendez*, __ Ariz. __, 2023 WL 4728653 at *1, ¶ 1 (Ariz. App. July 25, 2023) (cleaned up).

¶3        Viewed in this manner, the record shows that on October 21, 2018, a 911 caller reported a stopped car blocking a northbound lane of traffic on the I-17 freeway. Arizona Department of Public Safety Trooper Munoz responded to the scene. As soon as Trooper Munoz pulled up behind the vehicle with his emergency lights on, the vehicle began moving. Munoz then initiated a traffic stop and identified the driver (and sole occupant) by his Arizona identification card as James F. Lewis. A computerized record check disclosed that Lewis's driver's license was suspended.

¶4        Trooper Munoz observed that Lewis "display[ed] abnormal behavior" in that he "was very fidgety" and his eyes "were moving pretty fast all over the place." Lewis stated that he was having a panic attack, so Munoz requested medical attention from the Phoenix Fire Department. Emergency medical technicians arrived, assessed Lewis, and medically

cleared him. They informed Trooper Munoz, however, that Lewis reported having recently taken tramadol.

¶5         Arizona Department of Public Safety Detective Houchens, a drug recognition expert, arrived on the scene shortly thereafter.

¶6         After Lewis, his vehicle, and all other personnel and vehicles were moved off the highway to a location away from traffic, Munoz read Lewis his rights per *Miranda*.[1] Lewis agreed to answer questions and disclosed that he had recently taken tramadol and used medical marijuana. Detective Houchens then asked Lewis if he was willing to perform field sobriety tests; Lewis agreed. Lewis underwent several tests, including the horizontal gaze nystagmus (HGN) test, the Romberg modified test, and the finger-to-nose test. Determining from the tests that Lewis was under the influence, Detective Houchens placed him under arrest and transported him to a Department of Public Safety station.

¶7         After Lewis consented to a blood test, Sergeant Kudler, a phlebotomist, drew a sample of his blood, which was then submitted for testing. Lewis was not charged or booked into jail that evening.

¶8         The blood analysis yielded positive results for phencyclidine (PCP) and tetrahydrocannabinol (THC). The State presented the case to a grand jury in February 2020, which charged Lewis with two counts of aggravated DUI.

¶9         Lewis sought a Rule 11 evaluation to determine his competency twice before trial. Each time, the court appointed mental health professionals to evaluate Lewis. After considering the experts' reports, the court determined, both times, that Lewis was competent to stand trial.

¶10        At a trial management conference on March 22, 2022, the court granted Lewis's request to represent himself after engaging in a colloquy to determine that he was knowingly, intelligently, and voluntarily waiving his right to counsel. The court then appointed Lewis's attorney, Jose Saldivar, to serve as advisory counsel.

¶11        Trial began six days later, on March 28, 2022. Lewis represented himself throughout the majority of the trial, though, at Lewis's request, the court allowed advisory counsel to step in to handle the cross-examination of the State's forensic scientist and to examine Lewis when he took the stand. At the conclusion of the State's case-in-chief, Lewis moved

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

for a directed verdict under Arizona Rule of Criminal Procedure 20. After argument, the court denied the motion. Lewis then testified on his own behalf, and the State impeached him with one prior felony conviction under Arizona Rule of Evidence 609. The jury found Lewis guilty as to both aggravated DUI counts.

¶12        At the subsequent sentencing hearing, the court weighed aggravating and mitigating factors and sentenced Lewis to a mitigated term of 8 years with credit for 103 days' time served. The court imposed a total amount of $4,649 in fees and fines.

¶13        Lewis timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

¶14        After reviewing the entire record, s*ee State v. Thompson*, 229 Ariz. 43, 45, ¶ 3 (App. 2012), we find no reversible error. No evidence was obtained in a manner that violated Lewis's constitutional or statutory rights. All of the proceedings were conducted in compliance with applicable statutes and court rules. At all stages of the proceedings, Lewis was either represented by counsel or represented himself with the assistance of advisory counsel. The sentences imposed were within the statutory parameters, with proper credit for time spent in pretrial custody.

¶15        Lewis raises a number of arguments in his supplemental brief, all of which we reject as meritless.

### A. The Court Did Not Abuse Its Discretion In Finding Lewis Competent.

¶16        First, Lewis contends that the State violated due process by trying him while incompetent, stating that he has "obvious mental health issues."

¶17        This Court "review[s] a trial court's finding of competency for abuse of discretion," determining "whether reasonable evidence supports the trial court's finding that the defendant was competent" while viewing "the facts in the light most favorable to sustaining the trial court's finding." *State v. Glassel*, 211 Ariz. 33, 44, ¶ 27 (2005). The trial judge's determination of competency is entitled to deference in part because the judge is able to directly observe the defendant during court proceedings. *See Bishop v. Superior Court*, 150 Ariz. 404, 409 (1986) ("On questions of competency to

4

stand trial, not only is the judge a finder of fact, he is also a de facto witness who may take into consideration his own observations of the defendant.").

**¶18**		Lewis's competency was addressed twice during the pendency of this case. In July 2020, the court granted Lewis's Motion for Rule 11 Evaluation, ordering two "qualified mental health experts [to] be appointed to conduct an examination and complete a mental health evaluation report on [Lewis's] competency." One expert found Lewis competent to stand trial, opining that Lewis "was embellishing his mental/emotional condition" to be found incompetent, while the other found him not competent but restorable within the statutory timeline. Because their conclusions conflicted, the court appointed a third mental health expert, who found Lewis competent and opined that he was "purposely exaggerating his symptoms to avoid any legal consequences to his current charges." After considering the experts' reports, the court found Lewis competent pursuant to A.R.S. § 13-4510(B).

**¶19**		Later, in March 2021, Lewis requested a second examination of his competence to stand trial due to his "recently prescribed mental health medication." The court appointed two new mental health experts to evaluate him. Both found Lewis competent to stand trial, with one opining that Lewis "appeared to be feigning symptoms." After considering the experts' reports, the court again found Lewis competent pursuant to A.R.S. § 13-4510(B). Because reasonable evidence supports the court's determination that Lewis was competent to stand trial, we discern no abuse of discretion.

### B. The Court Did Not Violate Lewis's Right to Self-Representation.

**¶20**		Noting that his request to waive counsel and proceed *in propria persona* "was granted just six days before trial," Lewis argues that the court violated his right to self-representation and hindered his ability to prepare his defense. The court's "intentional delay in granting [his] request to proceed in pro per capacity," Lewis complains, gave the prosecutor "a tacticle [*sic*] advantage."

**¶21**		A review of the transcripts of the pretrial hearings in this case shows that Lewis himself is responsible for the delay he now complains of in granting his request to represent himself. At a pretrial hearing in December 2021, the court informed Lewis, in response to his repeated statements, "I'm representing myself," that he was required to submit a written motion to that effect. Upon doing so, the court told him, the court would "review the self-representation form on the record." When, at a

hearing the following month, the court asked Lewis whether he had reviewed the "waiver of counsel" form and discussed it with his attorney, Jose Saldivar, Lewis refused to answer, instead "invok[ing] [his] First Amendment rights." Stating that it interpreted Lewis's unwillingness to respond to indicate that he no longer sought to represent himself, the court proceeded with the hearing with Saldivar acting as Lewis's counsel. Although Lewis was disruptive at times, calling out "[h]e's not speaking for me" when the court directed a question at Saldivar, Lewis neither re-urged a request to represent himself nor indicated a willingness to discuss self-representation. When, at the next hearing in February 2022, Lewis reiterated his desire to represent himself, the court reminded him that he would need to review and sign the "waiver of counsel" form so the court could "go through it with you line by line" to be certain Lewis understood "what it means to represent yourself."

¶22　　　　At the trial management conference on March 22, 2022, Lewis finally confirmed that he had read and signed the "waiver of counsel" form. The court then reviewed the form with him, and, after conducting a colloquy to confirm that he wanted to represent himself despite understanding his constitutional rights and the benefits of representation by counsel, approved his request to represent himself.

¶23　　　　The court could have addressed and resolved Lewis's request to represent himself earlier but for Lewis's delays in complying with the court's instructions to review, sign, and submit a "waiver of counsel" form. Accordingly, any prejudice resulting from delay is of Lewis's own making, entitling him to no relief. *See State v. Lukezic*, 143 Ariz. 60, 69 (1984) (denying relief to defendant who was "the cause for the delay about which she complains on appeal"); *cf. State v. Gomez*, 231 Ariz. 219, 223, ¶ 15 (2012) ("[A] self-represented defendant must not only respect the dignity of the courtroom, but also comply with relevant rules.") (cleaned up).

## C. The Record Does Not Support Lewis's Claim that the Officers Violated His Right to Independent Blood Testing.

¶24　　　　Lewis asserts that Detective Houchens violated his constitutional rights at the time of the blood draw by failing to advise him of "his right to do independant [*sic*] chemical testing of the blood sample."

¶25　　　　Lewis's assertion is not borne out by the record. At no point during trial did either Detective Houchens or Sergeant Kudler testify about whether they advised Lewis of his right to an independent sample. Although he personally cross-examined those witnesses, Lewis never asked

them that question. Likewise, although he took the stand in his own defense, Lewis never testified that the officers failed to advise him of his right to have another sample drawn for independent testing. In the absence of any supporting evidence in the record, Lewis is entitled to no relief on this claim.

### D. The Trial Court Did Not Deny Lewis His Right To Present a Defense.

¶26        Asserting that he sought to present at trial the testimony of "Courtney Gaines, Oludare Onisile, and Allie from Poison Control," Lewis argues that the State's successful efforts to preclude these three witnesses "violated constitutional guarantees" by "denying [him] 'a meaningful opportunity to present a complete defense.'" The testimony of these witnesses, he contends, would have "destroyed the prosecution's case" by establishing that his "impairments" were "caused by his neuropathy and disability" and were thus "neurological" in nature.

¶27        Lewis did not identify these three individuals as potential witnesses until the morning the trial began. Although the State moved to preclude all three witnesses due to the lateness of the disclosure, the court deferred ruling on the State's motion to preclude, instead directing Lewis to provide the prosecutor with the prospective witnesses' contact information so the prosecutor could interview them. The record does not indicate that Lewis ever provided their contact information. Further, on the third day of trial, Lewis admitted that he had not yet spoken with either Dr. Gaines or Dr. Onisile to confirm their availability and willingness to testify. At the conclusion of the third day, the court ordered Lewis to provide their contact information to the prosecutor by email "by midnight tonight." The record contains no evidence that Lewis complied. As far as the trial transcripts show, Lewis never again expressed a desire to call either Dr. Gaines or Dr. Onisile to testify. At no point did the court preclude Dr. Gaines or Dr. Onisile from testifying. Because the record does not indicate that the court precluded either of these witnesses, Lewis's failure to present their testimony entitles him to no relief.

¶28        The court did, however, grant the State's motion to preclude "Allie from Poison Control" from testifying. The court's ruling was amply justified by the vagueness of the disclosure and by Lewis's failure to identify this person as a witness until the morning of trial. *See* Ariz. R. Crim. P. 15.2(b), (d) (requiring defendants to disclose all defenses and defense witnesses no later than 40 days after arraignment or 10 days after the State's witness disclosure, whichever occurs first). Although the untimely

disclosure of evidence does not necessarily justify its preclusion, preclusion is warranted where, as here, the evidence is disclosed so close to trial that the opposing party has no fair opportunity to investigate and respond to it. *See State v. Payne*, 233 Ariz. 484, 518, ¶¶ 154-56 (2013) (affirming preclusion of psychologist who was to testify as defense witness at penalty phase of trial, in part because psychologist was not disclosed until "two days before the penalty phase," "depriv[ing] the State of the opportunity to interview [psychologist] or obtain a rebuttal witness").

**¶29**        In any event, Lewis made no offer of proof at trial about the substance of the testimony that "Allie from Poison Control" was expected to offer, and so has failed to establish the importance of her testimony. *See id.* at ¶ 156; *see also State v. Fendler*, 127 Ariz. 464, 482 (App. 1980) (affirming prelusion of untimely-disclosed witnesses in part because defendant's "offer of proof was insufficient to fully inform the court of the relevancy, let alone the vitality, of the proposed testimony"). The court's order precluding Lewis from calling "Allie from Poison Control" as a witness therefore entitles him to no relief.

### E. Lewis's Challenge to the Sufficiency of the Evidence Entitles Him to No Relief.

**¶30**        Lewis asserts that the evidence fails to establish his guilt beyond a reasonable doubt. In so doing, he invites us to re-weigh the evidence that was presented at trial, which we cannot do. *State v. Lee*, 189 Ariz. 590, 603 (1997) ("When the evidence supporting a verdict is challenged on appeal, an appellate court will not reweigh the evidence.").

**¶31**        Lewis argues that the State failed to prove that he performed poorly on the field sobriety tests due to impairment. In support of this contention, Lewis first challenges Detective Houchens's qualifications to administer field sobriety tests. Noting that Detective Houchens "testified that he was certified to perform horizontal [g]aze nystagmus and field sobriety tests," Lewis asserts that the State "never provided any proof" to "corroborate these claims." This assertion is self-evidently false; Detective Houchens's own testimony constitutes competent evidence about his qualifications. *See McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 249, 251-52, ¶¶ 11, 17 (App. 2013) (holding that trial court erred in holding that proffered expert was not qualified to testify in premises liability claim against hotel where expert's qualifications were sufficiently established in his affidavit describing his relevant professional experience). Further, after Detective Houchens testified that he was certified as a drug recognition officer, Lewis was permitted to show the detective his certification log and

cross-examine him about its contents even though the document was never admitted in evidence. Lewis had a full opportunity to question Detective Houchens at trial about his qualifications, and he is entitled to no relief on appeal. *See State v. Delgado*, 232 Ariz. 182, 186, ¶ 12 (App. 2013) ("Whether a witness is qualified as an expert is to be construed liberally," and "[i]f an expert meets the liberal minimum qualifications, her level of expertise goes to credibility and weight, not admissibility.") (cleaned up).

¶32        Lewis next argues that his poor performance on the field sobriety tests conducted at the scene was attributable to medical issues and not impairment. Asserting that he "is a diabetic," Lewis maintains that "the symptoms of low blood sugar," which include "dizziness," "shaking," and "blured [*sic*] vision," account for his performance on the field sobriety tests. He goes on to suggest that the police are at least partly to blame for his performance, asserting the officers at the scene "asked [him] to perform tasks" without "allow[ing] [him] to eat" the food in his car that would have stabilized his blood sugar levels.

¶33        Lewis had a full opportunity to explore this issue at trial. He asked Detective Houchens on cross-examination whether he had complained at the scene that "his insulin levels" were "low"; Detective Houchens replied in the negative. In his testimony, Lewis asserted that his poor performance on the field tests "could have been due" to either "anxiety" or "low insulin levels." He realized at the time that his blood sugar was low, he testified, and so he asked the officers "[s]everal times" to let him "retrieve a plate of ribs that was located in [his] automobile" to help "level [his] insulin." In closing argument, Lewis argued that the first responders "didn't check [his] blood sugar, which should have been standard." Lewis had ample opportunity at trial to present his explanation for his performance on the field tests. The fact that, as their guilty verdicts suggest, the jurors did not accept Lewis's explanation entitles him to no relief on appeal.

¶34        Lewis discusses, at some length, his contention that his positive blood test results were erroneous. According to Lewis, the State failed to "follow up or investigate[]" Lewis's prescription medications, and so overlooked the "possibility of the false positive [*sic*] results" those medications may yield if the patient is "screened for illicit drugs." Indeed, he asserts, even "common" over-the-counter drugs like "Nyquil" and "Vicks nasal spray" may "contain phenylpropanolamine," which "will perduce [*sic*] false possitive [*sic*] [results] for Amphetamine." Likewise, he goes on, over-the-counter pain relievers such as "Ibuprofen" and "Advil" can yield false positive results for THC. "[Don't] take my word for it," he

urges; his assertions can be verified by a "visit" to the "drug Rx website." The State failed to consider the possibility of false positives resulting from the use of lawful medications, he concludes, and its failure to consider that possibility amounts to a "fail[ure] to meet the burden of proof beyond a reasonable doubt."

¶35        No evidence in the record supports Lewis's assertions about the possibility of false positives resulting from the use of the medications he references. Further, Lewis never presented an offer of proof that Dr. Gaines, Dr. Onisile, or any other witness would testify in support of those assertions. Because Lewis's arguments on this point have no support in the record, they entitle Lewis to no relief. *See GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4-5 (App. 1990) (noting that appellate court will not grant relief on claims that are based on evidence not part of the record on appeal).

¶36        Lewis argues that the State engaged in "willful misrepresentations" by charging him with driving "under the influence of drugs" when the State knew, but "ignored," evidence that at the time of his arrest he had taken only "doctor prescribed medications, authorized by the Drug Enforcement Agency." Although it is not entirely clear, Lewis appears to argue that he cannot be guilty of impaired driving because he had purportedly taken only medication that had been legally prescribed for him. If this is, in fact, Lewis's contention, it is unavailing as a matter of law. "It is not a defense to a charge of a violation of [A.R.S. § 28-1381(A)(1)] that the person is or has been entitled to use the drug under the laws of this state." A.R.S. § 28-1381(B).

#### F. Lewis's Remaining Arguments Entitle Him to No Relief.

¶37        Lewis accuses the State of "fraudulent concealment of material evidence," including "9-1-1 phone call audio recordings and transcript," "body cam and dash cam video footage" from Munoz and Houchens, "Phoenix Fire Department medical personnel names and badges," and the report made by the Phoenix Fire Department on October 21, 2018.

¶38        The record does not support Lewis's accusation that the State "fraudulently concealed" evidence. Not only did the State disclose the 911 audio recording before trial, but the State played the recording at trial without objection from Lewis. The State disclosed no body cam or dash cam video footage because, the State asserted, no such evidence existed. Lewis has presented no basis on which to disbelieve the State's assertions on this point. Likewise, Lewis points to nothing in the record to show that he ever

requested information from the fire department. Nor has he offered any basis to conclude that such information would be "plainly exculpatory" such that the State was obligated to disclose it in the absence of a request. *See State v. O'Dell*, 202 Ariz. 453, 457, ¶ 10 (App. 2002) ("[T]he state is required to disclose all *plainly exculpatory evidence* within its possession and violates due process if it fails to do so.") (emphasis added). In any event, Lewis has made no effort to explain what the purportedly undisclosed evidence would (or at least might) have proved, and so he has failed to establish that he was prejudiced by any nondisclosure. *See State v. Dumaine*, 162 Ariz. 392, 405-06 (1989) (holding that to obtain reversal of conviction based on nondisclosure of evidence, defendant must establish materiality of undisclosed evidence).

**¶39**      Lewis asserts that the State misled the court in its response to his motion to suppress the blood test results when it asserted that Lewis "failed to notice any expert, doctor, or pharmacist in this case" to testify that his blood test results could represent a false positive resulting from his use of prescription medication. The State's assertion was false, Lewis contends, because he (1) "provide[d] the State with a prescription list from his pharmacy at Walgreens," (2) showed the prosecutor his "medical THC card . . . issued by the Arizona Department of Health Services," and (3) disclosed a letter dated November 17, 2021 from Dr. Gaines regarding his medical history.

**¶40**      Lewis's assertions are meritless. Neither a list of his prescriptions nor his medical marijuana card, by themselves, constitute competent evidence to show that his blood test results were inaccurate. Moreover, as noted above, the legality of a defendant's use of the substance causing the impairment is no defense to a charge of driving while impaired. *See* A.R.S. § 28-1381(B). Further, the letter from Dr. Gaines merely states that Lewis is her patient, he "meets the definition of disability under the Americans with Disabilities Act," and he "continues to undergo medication management." Nothing in Dr. Gaines's letter controverts the evidence presented by the State or otherwise offers any kind of defense to the charges in this case. Lewis has cited nothing in the record to contradict, or call into question the accuracy of, the State's assertions in response to Lewis's motion to suppress.

**¶41**      Lewis complains that the court "displayed an abuse of discretion" by "fail[ing] to rule on" the motion to dismiss that he filed *in propria persona* on February 16, 2022.

¶42 At a hearing on February 24, the court acknowledged receiving the motion to dismiss that Lewis had filed eight days earlier but stated that it would not consider the motion on the merits, explaining, "Mr. Saldivar is your attorney and you're not representing yourself." The court's unwillingness to consider a motion filed *in propria persona* by a represented defendant was consistent with the well-established principle that a "defendant who is represented by counsel is not entitled to hybrid representation" and so "may not file motions in addition to those the attorney files." *State v. Carlson*, 237 Ariz. 381, 398, ¶ 63 (2015). Because Lewis was represented on February 16, 2022, he was not entitled to file motions on his own behalf, and the court did not abuse its discretion by refusing to address that motion on the merits.

¶43 In any event, the court considered, and denied, a subsequent motion to dismiss that Lewis filed shortly before the commencement of trial. We find no merit to Lewis's complaints about the court's failure to consider a prior motion to dismiss he filed on his own behalf while he was still represented by counsel.

¶44 Lewis concludes by asserting that "his ethnic background motivated Trooper Allen Munoz and Trooper Brian Houchens to turn an assistance or person in duress [*sic*] call into a D.U.I. investigation." Lewis points to no evidence to support this accusation, and his speculation about the motives of the investigating officers entitles him to no relief. *See State v. Diaz*, 223 Ariz. 358, 361, ¶ 13 (2010) ("We will not reverse a conviction based on speculation or unsupported inference."). In any event, the jury's verdict establishes Lewis's guilt beyond a reasonable doubt, rendering irrelevant his unsupported allegations about the purportedly improper motives of the investigating officers. *See Scott v. United States*, 436 U.S. 128, 138 (1978) (noting that officer's state of mind "does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action"); *State v. Jeney*, 163 Ariz. 293, 296 (App. 1989) (citing, with approval, case law holding that "so long as the police do no more than they are objectively authorized and legally permitted to do, their motives in making an arrest are irrelevant and not subject to inquiry").

**CONCLUSION**

¶45 For the foregoing reasons, we affirm.

¶46 Unless, upon further review, appellate counsel discovers an issue appropriate to raise with the Arizona Supreme Court, counsel's obligations will end once counsel "informs [Lewis] of the status" of this

appeal and his "future options." *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Lewis has 30 days from the date of this decision to file a motion for reconsideration or a petition for review on his own behalf.



AMY M. WOOD • Clerk of the Court
FILED:    TM